## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS,
## FORT WORTH DIVISION

| | |
|---|---|
| STATE OF TEXAS, | |
| Plaintiff, | Civil Action No. 4:21-cv-00579-P |
| v. | |
| JOSEPH R. BIDEN, JR., et al., | |
| Defendants. | |

## REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

AARON F. REITZ
Deputy Attorney General for Legal
Strategy
Texas Bar No. 24105704
P.O Box 12548
Austin, Texas 78711-2548
Phone: (512) 936-1989
aaron.reitz@oag.texas.gov

CHRISTOPHER J. HAJEC
MATT A. CRAPO
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(540) 205-7986
litigation@irli.org

MATTHEW G. WHITAKER
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
info@aflegal.org

**TABLE OF CONTENTS**

Table of Authorities........................................................................................... ii

Introduction ........................................................................................................1

Argument.............................................................................................................3

I.   This Court should reject Defendants' jurisdictional arguments. ..............3

    A.   Texas has standing to sue. ...................................................................3

        1.   Texas suffers cognizable financial injury. ..................................4

        2.   Texas suffers cognizable public-health injury as *parens patriae*...................................................................................................5

    B.   Sovereign immunity does not bar this action. ....................................7

        1.   The February Order is final agency action. ................................8

        2.   The challenged actions are not committed to agency discretion....................................................................................9

        3.   Non-APA review would be available even if APA review were not....................................................................................10

II.   Texas is likely to succeed on the merits. ...................................................11

    A.   The Defendants failed to use reasoned decisionmaking in departing from the Title 42 process. .................................................11

    B.   The Defendants failed to consider State reliance interests.............14

    C.   Texas did not waive any claims. .........................................................15

III. Texas Will Suffer Irreparable Harm Absent a Preliminary Injunction from This Court. ..........................................................................20

Conclusion ........................................................................................................22

## TABLE OF AUTHORITIES

**CASES**

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ............................................................................... 8

*Accardi v. Shaughnessy,*
   347 U.S. 260 (1954) ............................................................................. 11

*Agostini v. Felton,*
   521 U.S. 203 (1997) ............................................................................... 6

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
   458 U.S. 592 (1982) ............................................................................... 5

*Arizona v. United States,*
   567 U.S. 387 (2012) ............................................................................. 15

*Aspen Tech., Inc. v. M3 Tech., Inc.,*
   569 F. App'x 259 (5th Cir. 2014) ...................................................... 22

*Barrera v. Wolf,*
   455 F.Supp.3d 330 (S.D. Tex. 2020) ................................................ 21

*Bennett v. Spear,*
   520 U.S. 154 (1997) ............................................................................... 8

*Blatchford v. Native Vill. of Noatak,*
   501 U.S. 775 (1991) ............................................................................... 7

*Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.,*
   419 U.S. 281 (1974) ............................................................................. 12

*Califano v. Sanders,*
   430 U.S. 99 (1977) ................................................................................. 7

*California v. Texas,*
   141 S. Ct. 2104 (2021) ........................................................................... 4

*Chamber of Commerce of the United States v. Reich,*
   74 F.3d 1322 (D.C. Cir. 1996) .............................................................. 7

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971) ............................................................................... 9

*Compare Texas v. Rettig,*
   987 F.3d 518 (5th Cir. 2021) .............................................................. 17

*Crane v. Johnson,*
   783 F.3d 244 (5th Cir. 2015) ................................................................ 4

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
   140 S. Ct. 1891 (2020) ......................................................................... 11

*DHS v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020) ................................................................................. 15

*Ellison v. Connor,*
  153 F.3d 247 (5th Cir. 1998) ......................................................................... 9

*Encino Motorcars, LLC v. Navarro,*
  136 S. Ct. 2117 (2016) ........................................................................... 11, 12

*Envtl. Def. Fund, Inc. v. Corps of Eng'rs of United States Army,*
  492 F.2d 1123 (5th Cir. 1974) ....................................................................... 9

*Ex parte Young,*
  209 U.S. 123 (1908) ..................................................................................... 10

*FPC v. Nat. Gas Pipeline Co.,*
  315 U.S. 575 (1942) ..................................................................................... 11

*Grupo Mexicano De Desarrollo v. Alliance Bond Fund,*
  527 U.S. 308 (1999) ..................................................................................... 10

*Hamama v. Adducci,*
  946 F.3d 875 (6th Cir. 2020) .................................................................. 18, 19

*Hyder v. Keisler,*
  506 F.3d 388 (5th Cir. 2007) ......................................................................... 6

*Independent U.S. Tanker Owners Comm. v. Lewis,*
  690 F.2d 908 (D.C. Cir. 1982) ................................................................... 8, 10

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ....................................................................................... 3

*Massachusetts v. EPA,*
  549 U.S. 497 (2007) ....................................................................................... 7

*Massachusetts v. Mellon,*
  262 U.S. 447 (1923) .................................................................................... 5, 6

*Michigan* v. *EPA,*
  576 U.S. 743 (2015) ..................................................................................... 11

*Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.,*
  463 U.S. 29 (1983) ....................................................................................... 13

*Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins.*
  *Co.,* 463 U. S. 29 (1983) ............................................................................... 11

*Newpark Shipbuilding & Repair, Inc. v. Roundtree,*
  723 F.2d 399 (5th Cir. 1984) ......................................................................... 9

*Ohio Forestry Ass'n, Inc., v. Sierra Club,*
  523 U.S. 726 (1998) ....................................................................................... 9

*Philadelphia Co. v. Stimson,*
    223 U.S. 605 (1912)..................................................................................... 10

*Plyler v. Doe,*
    457 U.S. 202 (1982)..................................................................................... 14

*Qureshi v. Holder,*
    663 F.3d 778 (5th Cir. 2011).......................................................................... 8

*Rodriguez de Quijas v. Shearson/American Express, Inc.,*
    490 U.S. 477 (1989)....................................................................................... 6

*Sea-Land Serv., Inc. v. Alaska R.R.,*
    659 F.2d 243 (D.C. Cir. 1982)........................................................................ 7

*SEC v. Chenery Corp.,*
    318 U.S. 80 (1943)....................................................................................... 13

*Service v. Dulles,*
    354 U.S. 363 (1957)..................................................................................... 11

*Sierra Club v. United States Env't Prot. Agency,*
    939 F.3d 649 (5th Cir. 2019)........................................................................ 14

*Simon v. Eastern Kentucky Welfare Rights Org.,*
    426 U.S. 26 (1976)..................................................................................... 3, 5

*Tel. & Data Sys. v. FCC,*
    19 F.3d 42 (D.C. Cir. 1994)........................................................................ 3, 5

*Teladoc, Inc. v. Tex. Med. Bd.,*
    112 F.Supp.3d 529 (W.D. Tex. 2015)........................................................... 21

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019).......................................................................... 8

*Texas v. United States,*
    2021 U.S. Dist. LEXIS 33890 (S.D. Tex. Feb. 23, 2021) ............................. 19

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015)........................................................................ 15

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court,* 136 S. Ct. 2271
    (2016)............................................................................................................ 5

*U.S. v. Macdaniel,*
    32 U.S. (7 Pet.) 1 (1833).............................................................................. 11

*Union City Barge Line, Inc. v. Union Carbide Corp.,*
    823 F.2d 129 (5th Cir. 1987)........................................................................ 20

*United States Telecom Ass'n v. FCC,*
    359 F.3d 554 (D.C. Cir. 2004)...................................................................... 17

*United States v. Becton,*
    632 F.2d 1294 (5th Cir. 1980) ................................................................... 6

*United States v. Students Challenging Regulatory Agency Procedures,*
    412 U.S. 669 (1973) .................................................................................... 7

*Villas at Parkside Partners v. City of Farmers Branch,*
    577 F. Supp. 2d 880 (N.D. Tex. 2008) ..................................................... 16

## STATUTES

5 U.S.C. § 552, §§ 701-706 ............................................................................ 3

5 U.S.C. § 702 ................................................................................................ 7

5 U.S.C. § 704 ................................................................................................ 8

5 U.S.C. § 706(2)(A) ................................................................................ 11, 14

8 U.S.C. § 1222(a) ............................................................................. 18, 19, 20

8 U.S.C. § 1225(b) ........................................................................................ 19

8 U.S.C. § 1226(a), (c) .................................................................................. 19

8 U.S.C. § 1252(f)(1) ............................................................................... 18, 19

8 U.S.C. §§ 1221-1232 .................................................................................. 18

## OTHER AUTHORITIES

Judiciary Act of 1789, Ch. 20, §11, 1 Stat. 73 ........................................... 10

Judiciary Act of 1875, Ch. 137, §1, 18 Stat. 470 ....................................... 10

A.B.A. Section of Admin. Law & Regulatory Practice, *A Blackletter Statement of
    Federal Administrative Law*, 54 ADMIN. L. REV. 1, 46 (2002) ................. 11

Cheryl Teh, *Researchers are investigating if a COVID-19 with multiple mutations
    found in India is more deadly and resistant to existing vaccines*, BUSINESS
    INSIDER, https://www.businessinsider.com/covid-triple-mutant-in-india-could-be-
    much-more-deadly-2021-4 (Apr 23, 2021) ............................................... 21

Kenneth Culp Davis, *Nonreviewable Administrative Action,* 96 U. PA. L. REV. 749,
    776 (1948) ..................................................................................................... 7

Luke Money & Rong-Gong Lin II, *Unvaccinated people face growing danger as Delta
    variant stalls herd* immunity, L.A. TIMES,
    https://www.latimes.com/california/story/2021-07-12/options-as-contagious-delta-
    variant-stalls-herd-immunity (July 12, 2021) ........................................... 21

**RULES**

Fed. R. App. P. 28(a)(8)(A) ................................................................. 16

Local Civil Rule 7.1(d) ........................................................................ 16

**REGULATIONS**

85 Fed. Reg. 65,807 ................................................................... 12, 15

85 Fed. Reg. 65,810 ......................................................................... 12

86 Fed. Reg. 24,297 ............................................................................ 1

86 Fed. Reg. 7,467 .............................................................................. 1

86 Fed. Reg. 9,942 ................................................................... 12, 14

## INTRODUCTION

COVID-19 is highly contagious and nearly impossible to contain once it is introduced to the general population. Recognizing the threat COVID-19 poses, the Director of the Centers for Disease Control and Prevention ("CDC") issued a Final Rule and a detailed Order (the "Title 42" process) to prevent aliens infected with COVID-19 who could end up in a congregate care setting from crossing land borders into the United States. Among other things, Title 42 authorizes the Department of Homeland Security ("DHS"), acting on behalf of the CDC, to rapidly expel illegal aliens who enter or attempt to enter the country unlawfully.

Governments worldwide have consistently imposed or expanded travel restrictions as new outbreaks or variant strains of the virus emerge. President Biden, and President Trump before him, restricted travel to the United States for individuals from China, Iran, Brazil, South Africa, the European Schengen area, the United Kingdom, and Ireland.[1] Indeed, as recently as April 30, 2021, following an outbreak of new variants of the virus in India, President Biden suspended the entry of individuals from that country.[2] Despite these travel restrictions and border-control measures, individuals from countries where COVID-19 has been particularly deadly and/or economically devastating continue to attempt to enter the United States.

---

[1] *See* Presidential Proclamation 10143 of January 25, 2021, *Suspension of Entry as Immigrants and Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting Coronavirus Disease 2019*, 86 Fed. Reg. 7,467.

[2] *See* Presidential Proclamation 10199 of April 30, 2021, *Suspension of Entry as Nonimmigrants of Certain Additional Persons Who Pose a Risk of Transmitting Coronavirus Disease 2019*, 86 Fed. Reg. 24,297.

1

Miriam Jordan, *From India, Brazil and Beyond: Pandemic Refugees at the Border*, N.Y. TIMES, https://www.nytimes.com/2021/05/16/us/migrants-border-coronavirus-pandemic.html (May 16, 2021).

Currently, Mexico is experiencing a third wave of coronavirus, with confirmed case numbers increasing 53 percent from May to June and deaths increasing 42 percent over the same period. *See Health minister acknowledges third wave of coronavirus is underway in Mexico*, MEXICO NEWS DAILY, https://mexiconewsdaily.com/news/coronavirus/health-minister-acknowledges-third-wave-of-coronavirus-is-under-way-in-mexico (July 6, 2021). But even as Defendants continue to suspend the entry of aliens from certain countries to prevent the spread of COVID-19, Defendants have unlawfully excepted certain classes of aliens, including unaccompanied alien children and certain family units, from the CDC's Title 42 process without explanation or reason.

Texas and the other States rely on the federal government to prevent COVID-19 transmission across the nation's borders. Because Defendants' arbitrary and capricious departure from the October Order imposes irreparable harm on Texas and its citizens, this Court should grant injunctive relief.

## ARGUMENT

### I.   THIS COURT SHOULD REJECT DEFENDANTS' JURISDICTIONAL ARGUMENTS.

Defendants challenge Texas's standing and right to judicial review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 552, §§ 701-706.[3] Their arguments are meritless.

### A.   Texas has standing to sue.

Defendants challenge Texas's standing to assert the financial and public-health injuries that Texas seeks to prevent. *See* Defs.' Opp'n at 12-21. This Court should reject Defendants' arguments on both types of injuries. Indeed, because Texas asserts procedural injuries, the Article III threshold is lowered for immediacy and redressability. Pl.'s Memo. at 32 n.10; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571-72 & n.7 (1992). Moreover, while Defendants argue that it is "substantially more difficult to establish" Article III standing for indirect injury (*i.e.*, for the injuries that Texas suffers from Defendants' failure to regulate third-party aliens), Defs.' Memo. at 12 (quoting *Defenders of Wildlife*, 504 U.S. at 562), that burden is readily met as a matter of law if the injurious conduct "would have been illegal without that [governmental] action." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 n.25 (1976); *Tel. & Data Sys. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994). Here, the aliens in question should have been returned to Mexico or other countries under the

---

[3] Defs.' Opp'n at 12-27.

*status quo ante litem*.[4] The fact that these aliens remain here—and wind up in Texas—under Defendants' unlawful policies provides the causal link that otherwise could be lacking in indirect-injury cases.

### 1. Texas suffers cognizable financial injury.

Defendants make three meritless arguments against Texas's claim of standing based on the increased costs that Defendants' unlawful action will cause.

First, citing *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015), Defendants argue that the claim that "illegal immigration is costing the state money" constitutes a generalized grievance. Defs.' Opp'n at 13. In *Crane*, 783 F.3d at 252, however, the illegal aliens were already present in the plaintiff state, and the plaintiffs could not show that providing those aliens with work authorization would impose *additional* costs. By contrast, the argument here is that Defendants' unlawful actions *increase* the illegal-alien population and thus increase Texas's costs.

Second, Defendants cite *California v. Texas*, 141 S. Ct. 2104, 2117 (2021), to argue that Texas has not shown causation. Defs.' Opp'n at 13-14. Texas preemptively addressed this argument, Pl.'s Memo. at 29, and Defendants do nothing to rebut Texas's showing. In *California*, the Supreme Court found insufficient proof of a causal link, either direct or indirect, between the challenged action—a 0% new tax on failing to obtain health insurance—and any increased costs to States. Here, by contrast, the

---

[4] The "status quo ante litem … means the last, uncontested status which preceded the pending controversy." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (interior quotation marks omitted).

unlawful action clearly causes the injury: the actions that Texas asserts are unlawful are causing an influx of illegal aliens into Texas, and that influx in turn causes injuries to Texas. That suffices for Article III. *Simon*, 426 U.S. at 45 n.25; *Tel. & Data Sys.*, 19 F.3d at 47. For example, each new UAC imposes new educational costs.

Third, and related to the first point, Defendants cite *Texas v. United States*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016)), for the proposition that the immigration benefits conferred there somehow distinguish the costs that Texas incurs in this case from the costs that the Fifth Circuit found sufficient for Article III in that case. As with *Crane*, however, this argument is flawed. Surely, if costs stemming from benefits conferred on illegal aliens already in Texas confer standing, costs stemming from an influx, caused by Defendants, of illegal aliens into Texas confer standing.

For all these reasons, this Court should recognize that Texas has standing based on the costs that Defendants' unlawful actions will cause Texas to incur.

### 2. Texas suffers cognizable public-health injury as *parens patriae*.

Citing extra-circuit decisions and *dicta* from *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982), Defendants argue that "[a] State does not have standing as *parens patriae* to bring an action against the Federal Government." Defs.' Opp'n at 17-18. As Defendants acknowledge, however, the *Snapp dicta* cited *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923), as the source. *Id.* at 17. As Texas explained, *Mellon* expressly did "not go so far as to say that a State may never intervene by suit to protect its citizens against any form of enforcement of

unconstitutional acts of Congress; but we are clear that the right to do so does not arise here." Pl.'s Memo. at 30 (quoting *Mellon*, 262 U.S. at 485). While Defendants claim that "[d]icta of the Supreme Court are, of course, another matter," Defs.' Opp'n at 18 n.9 (quoting *United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980)), that rings hollow here because this Court must choose between the inapposite *Snapp* decision's *dicta* based on *Mellon* and the *Mellon* decision's limitation on the *Mellon* holding. Under the circumstances, this Court should follow *Mellon*:

> "[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."

*Agostini v. Felton,* 521 U.S. 203, 237 (1997) (quoting *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989)). Further, "we note that [an extra-circuit decision] is not binding precedent in this circuit." *Hyder v. Keisler*, 506 F.3d 388, 393 (5th Cir. 2007). Because neither Defendants' brief nor the brief's cited authorities undermine the *parens patriae* authorities from within this Circuit on which Texas relies, this Court should find that Texas has *parens patriae* standing to challenge the unlawful actions of the federal-officer defendants, whose actions are not sovereign. *See* Section I.B.3, *infra*; Pl.'s Memo. at 29-31.

Allowing Texas to sue under *parens patriae* resolves the Article III faults that Defendants perceive because when Texas sues on behalf of the entire exposed State, there is no need to identify an affected member who has standing, as there was in the generalized-grievance decisions on which Defendants rely. *See* Defs.' Memo. at 20. Unlike Public Citizen, Inc., the State of Texas is not a mere membership organization:

"States entered the federal system with their sovereignty intact." *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779 (1991). As such, Texas "is entitled to special solicitude in [the] standing analysis." *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007), and any measurable "trifle" of injury is enough for Article III: "We have allowed important interests to be vindicated by plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $ 5 fine and costs, and a $1.50 poll tax." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973) (citations omitted). Even if Texas citizens individually suffer mere probabilistic risk of grave injury from Defendants' actions, Texas, as *parens patriae*, for the entire State suffers the full aggregate exposure as a concrete certainty.

### B. <u>Sovereign immunity does not bar this action.</u>

Although Defendants couch the issue of judicial review as jurisdictional, Defs.' Opp'n at 22-28, that is not entirely accurate. As enacted, the APA provided a cause of action, but did not provide subject-matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). Although the 1976 amendments to 5 U.S.C. § 702, PUB. L. NO. 94-574, § 1, 90 Stat. 2721 (1976), waived sovereign immunity for prospective injunctive or declaratory relief, *Sea-Land Serv., Inc. v. Alaska R.R.*, 659 F.2d 243, 244 (D.C. Cir. 1982) (R.B. Ginsburg, J.), a plaintiff seeking to enjoin an ongoing violation of federal law can sue under pre-APA equitable doctrines, without resort to the APA. *Chamber of Commerce of the United States v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("[N]othing in the subsequent enactment of the APA altered the [pre-existing] doctrine of review[.]"); Kenneth Culp Davis, *Nonreviewable Administrative Action,* 96 U. PA. L. REV. 749, 776 (1948) (when review is cut off under the Act (that is, the APA),

"[t]he result is that the pre-Act law continues"). While Texas disputes the arguments that Defendants raise under the APA, this action can proceed without regard to the APA under pre-APA equitable modes of judicial review.

### 1. The February Order is final agency action.

For the APA to apply, the challenged action must be either independently reviewable by statute or final agency action. 5 U.S.C. § 704. As relevant here, the "pragmatic" and "flexible" test for finality involves a two-part test: (1) the action consummates the agency's decision-making process, and (2) legal consequences will flow from the action. *Texas v. EEOC*, 933 F.3d 433, 443-46 (5th Cir. 2019) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997), and *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). This test is easily met. Because the February Order formally suspends the October Order as applied to UAC, it both is the consummation of a process and has legal consequences. "[C]alling the rule adopted an 'interim' one does nothing to insulate it from the judicial review authorized in the APA." *Independent U.S. Tanker Owners Comm. v. Lewis*, 690 F.2d 908, 918 (D.C. Cir. 1982). Defendants' argument, Defs.' Opp'n at 22-23, that their ongoing consideration of how they might *further* change the October Order in the future does not make the February change any less final under the APA.

The procedural nature of Texas's claim undermines Defendants' attempt to evade review based on their argument that the changed policy may or may not result in a given alien's ultimate removal. *See* Defs.' Opp'n at 22-23 (citing *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011)). Present procedural violations do not require plaintiffs to await future agency action. *Ohio Forestry Ass'n, Inc., v. Sierra*

8

*Club,* 523 U.S. 726, 737 (1998) ("[A] person with standing who is injured by a failure to comply with [required] procedure may complain of that failure at the time the failure takes place, for the claim can never get riper.").[5] Without an exception from its requirements, the APA does not authorize Defendants to change rules—in the interim or permanently—without a rulemaking.

### 2.    The challenged actions are not committed to agency discretion.

Citing the underlying *statute* on which their predecessors relied to promulgate the Title 42 *rule,* Defendants wrongly and misleadingly claim that their actions here are committed to their discretion. Defs.' Opp'n at 24-25.

First, "this agency discretion exception is a very narrow one, 'applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Envtl. Def. Fund, Inc. v. Corps of Eng'rs of United States Army,* 492 F.2d 1123, 1139 (5th Cir. 1974) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410 (1971)); *accord Ellison v. Connor,* 153 F.3d 247, 251 (5th Cir. 1998) (same). Furthermore, the "agency's own regulations can provide the requisite 'law to apply.'" *Ellison,* 153 F.3d at 251. Here, the law for the Court to apply is the October Order, unless and until Defendants formally amend that

---

[5] APA finality has "significant overlap" with ripeness, *Newpark Shipbuilding & Repair, Inc. v. Roundtree,* 723 F.2d 399, 403 n.5 (5th Cir. 1984). And here, the two doctrines amount to one and the same: "While 'ripeness' is primarily concerned with preventing judicial review of hypothetical or abstract problems that may not come to pass, the finality requirement seeks mainly to ensure that the parties have exhausted all avenues of administrative relief before resorting to appellate judicial review." *Id.* (interior citations omitted). Here, Texas has no administrative avenue to exhaust because Defendants did not undertake the required APA rulemaking and Texas is not a party to the individual aliens' removal proceedings.

applicable rule.

Second, and relatedly, whatever discretion the Title 42 *statute* gives Defendants is simply not relevant to whether they can ignore the Title 42 *rule* that their predecessors promulgated:

> As noted above, [the agency] was not required by law to promulgate any rules limiting its discretion. But it was nonetheless bound by the requirements of the Administrative Procedure Act (APA) when it decided to do so.

*Independent U.S. Tanker Owners Comm.*, 690 F.2d at 918. Having promulgated the Title 42 rule, Defendants were obligated under the APA to follow the rule until amended, even if the underlying statute gives Defendants the discretion to adopt a wide variety of possible alternate rules.

### 3.   Non-APA review would be available even if APA review were not.

Even if Defendants were correct that the APA is inapplicable, that would not prevent review here. Federal district courts have had equity jurisdiction since the Judiciary Act of 1789 conferred jurisdiction over "all suits … in equity." Ch. 20, §11, 1 Stat. 73, 78 (1789); *Grupo Mexicano De Desarrollo v. Alliance Bond Fund*, 527 U.S. 308, 318 (1999) (discussing equity jurisdiction). The Judiciary Act of 1875, Ch. 137, §1, 18 Stat. 470, added federal-question jurisdiction, and that includes review of agency action. *See Ex parte Young*, 209 U.S. 123, 149 (1908) (recognizing officer-suit exception to sovereign immunity to enjoin ongoing violation of federal law); *Philadelphia Co. v. Stimson,* 223 U.S. 605, 620 (1912) (*Ex parte Young* doctrine "is equally applicable to a Federal officer acting in excess of his authority"); A.B.A.

Section of Admin. Law & Regulatory Practice, *A Blackletter Statement of Federal Administrative Law*, 54 ADMIN. L. REV. 1, 46 (2002) (it is blackletter law that "suits against government officers seeking prospective equitable relief are not barred by the doctrine of sovereign immunity"). Similarly, the obligation to follow an agency's own rules arises in non-APA cases, *Service v. Dulles*, 354 U.S. 363, 372 (1957) (*citing Accardi v. Shaughnessy*, 347 U.S. 260 (1954)), and predates the APA's enactment by more than a century. *U.S. v. Macdaniel*, 32 U.S. (7 Pet.) 1, 15 (1833); *see also FPC v. Nat. Gas Pipeline Co.*, 315 U.S. 575, 586 (1942). As set out above, the APA applies here, but the APA is not necessary.

## II.   TEXAS IS LIKELY TO SUCCEED ON THE MERITS.

### A.   <u>The Defendants failed to use reasoned decisionmaking in departing from the Title 42 process.</u>

The APA requires Defendants to use reasoned decisionmaking.  5 U.S.C. § 706(2)(A); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020); *Michigan* v. *EPA*, 576 U.S. 743, 750 (2015). This means having and articulating adequate reasons. *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016).  This means deciding based on consideration of all the relevant factors and not ignoring or failing to consider an important aspect of the problem. *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43 (1983).  This also means articulating a satisfactory explanation for and action including a rational connection between the facts found and the choice made." *Id.*  And this requirement is satisfied only if the government's path may reasonably

be discerned. *Encino*, 136 S. Ct. at 2125 (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 286 (1974)).

The February Order violates the APA and is arbitrary and capricious because it lacks a reasoned explanation for excepting UAC from Title 42 process.

In the October Order, the CDC Director found that the introduction of covered aliens into the United States would endanger public health and therefore suspended introducing such aliens until the CDC determines that "the danger of further introduction of COVID-19 into the United States has ceased to be a serious danger to the public health." 85 Fed. Reg. at 65,810. The October Order defined "covered aliens" as those "seeking to enter the United States at POEs who lack proper travel documents, aliens whose entry is otherwise contrary to law, and aliens who are apprehended at or near the border seeking to unlawfully enter the United States between POEs." 85 Fed. Reg. at 65,807. UAC who lack proper travel documents unquestionably fall within the definition of "covered aliens" under the October Order.

In the February Order, the CDC Director announced an exception from the October Order for UAC. *See* 86 Fed. Reg. 9,942. The CDC Director did not provide any reason for excepting UAC from the October Order other than to state that the CDC was "in the process of reassessing the overall public health risk at the United States' borders … as well as the situation at the Nation's borders." *Id.* (emphasis added). As Defendants' point out (Defs.' Opp'n at 28), Texas argues that this "uncompleted process is not enough to suspend an existing rule." (Pl.'s Memo. at 18). Contrary to Defendants' suggestion that this language constitutes a concession that

12

the February Order is not a final agency action (Defs.' Opp'n at 28), Texas was merely observing that an ongoing reassessment of the public health risk is not an adequate basis to rewrite the October Order to except UAC.

Indeed, Defendants go to some length to suggest that DHS is taking steps to ensure that the introduction of UAC into the United States does not pose a serious risk to the public health. (Defs.' Opp'n at 6-7, 19 (noting the public heath protocols for processing UAC)). But neither the October nor February Order made any findings that the use of such health protocols would make the prohibition of the introduction of such aliens into the United States unnecessary or unwarranted. Instead, Defendants are attempting to provide a post hoc rationale for the exception for UAC from the Title 42 process. The court cannot base its review on this post hoc rationale. "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (pre-APA); *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 50 (1983) ("*MVMA*") (APA review limits agencies to the "the basis articulated by the agency itself" in the record).

Defendants' suggestion that the February Order "addressed a matter committed to the agency's discretion" (Defs.' Opp'n at 29) is similarly unavailing. *See* Section I.B.2, *supra*. The October Order exercised that discretion by prohibiting the introduction of "covered aliens" into the United States. Having established the rule, the CDC can only amend or rescind that rule by supplying a reasoned analysis for the rule change. "An agency's view of what is in the public interest may change, either

13

with or without a change in circumstances. But an agency changing its course must supply a reasoned analysis[.]." *MVMA*, 463 U.S. at, 57 (interior quotation marks omitted); *id.* at 42 ("[A]n agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance."); *Sierra Club v. United States Env't Prot. Agency*, 939 F.3d 649, 664 (5th Cir. 2019) (agency's reasoned decision-making must consider the relevant factors). The February Order does not even identify *any new information* arising after October 16, 2020, much less provide a rational explanation for the CDC's abrupt departure from the process outlined in the October Order. *See* 86 Fed. Reg. 9,942. Because the CDC did not provide such a reasoned analysis in its February Order, the Court is likely to set it aside as unlawful. 5 U.S.C. § 706(2)(A).

**B.      <u>The Defendants failed to consider State reliance interests.</u>**

Texas is also likely to succeed on the merits because Defendants acted in an arbitrary and capricious manner by not considering the State of Texas's reliance interests in the continuation of the Title 42 policy.

Although the Title 42 process played a role in protecting the health, safety, and resources of Texas and its citizens since the early days of the pandemic, Defendants argue that "the government did not need to take into account any of Texas's alleged 'reliance interests'" because "Texas is not in any way regulated by the Title 8 and Title 42 processes at issue[.]" (Defs.' Opp'n at 29). But the Supreme Court and the Fifth Circuit have expressly acknowledged that States have "an interest in mitigating the potentially harsh economic effects of sudden shifts in population" caused by immigration policy changes. *Plyler v. Doe*, 457 U.S. 202, 228 (1982); *see also id.* at

n.23 (explaining that, because the Constitution deprives States of any "direct interest in controlling entry into this country, … unchecked unlawful migration might impair the State's economy generally, or the State's ability to provide some important service"); *Arizona v. United States*, 567 U.S. 387, 397 (2012) (acknowledging that States "bear[] many of the consequences of unlawful immigration"); *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913-14 (2020) (finding that a sudden shift in the government's immigration policy was arbitrary and capricious in part because the government "failed to address whether there was legitimate reliance" on the former immigration policy (internal quotation marks omitted)); *Texas v. United States*, 809 F.3d 134, 152-54 (5th Cir. 2015).

CDC's broad discretion to determine what is required in the interest of public health (Defs.' Opp'n at 30) does not absolve CDC of its obligation to consider relevant factors and provide a reasoned explanation for its decision. *See Regents*, 140 S. Ct. at 1913-14 (faulting the agency for failing to consider reliance interests in rescinding a discretionary deferred action program); *id.* at 1930-31.

Finally, Texas does not claim a reliance interest in the Title 42 process's application to aliens to whom the October Order does not apply or to "*case-by-case, individualized* exceptions" in accordance with the October Order. 85 Fed. Reg. at 65,807; *contra* Defs.' Opp'n at 30. Rather, Texas challenges the unlawful exception for UAC set forth in the February Order and any unlawful exception for family units.

### C.   <u>Texas did not waive any claims.</u>

Defendants argue that Texas waived its right to a preliminary injunction on the claims it developed in the background section of its opening brief without further

explication in arguing for the likelihood of success on the merits. Defs.' Opp'n at 30-31. As Defendants' argument implicitly acknowledges, Texas's opening brief included a substantive merits briefing of the factual background and legal basis for these claims. *See* Pl.'s Memo. at 3-15. Texas also sought relief on both the February Order and the change in policy for families in arguing its likelihood of success. *See id.* at 19, 20. That is all that Local Civil Rule 7.1(d) requires.[6] *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 880, 882 n.1 (N.D. Tex. 2008). Defendants' waiver argument should be rejected.

Defendants state that Texas "is ignoring the reality that in some cases expulsion simply is not possible either because the October Order does not actually apply to the family in question, because Mexico will not accept the family, or because the home country has imposed practical limitations that effectively prevent a timely expulsion under Title 42." Defs.' Opp'n at 32 (citing Defendants' App. 20-21).

Texas demonstrated in its opening brief that the percentage of family units who are processed under Title 42 has plummeted since late last year even as the number of encounters exploded by more than 900 percent. Pl.'s Memo. at 9-10. In light of this drastic drop in Title 42 enforcement actions (coupled with a corresponding increase in Title 8 enforcement actions), Texas reasonably concluded that Defendants had apparently abandoned their own rules for processing family

---

[6] Unlike Federal Rule of Appellate Procedure 28(a)(8)(A), which requires "appellant's contentions and the reasons for them" to be included in the argument section of an appellate brief, Local Rule 7.1(d) only requires moving parties to "set forth the contentions of fact and/or law, and argument and authorities" in a brief accompanying the motion.

units. *Id.* at 10. Defendants acknowledge that the vast majority (approximately 80 percent) of all family units currently being encountered on the southwest border cannot be expelled for one reason or another. Defendants' App. at 20-21 (averring that family units cannot be expelled because: they are not covered by the October Order; Mexico or their home country either will not accept their return or will impose practical limitations that prevent timely expulsions; or DHS has exercised its discretion to except them from the October Order).

Importantly, Defendants acknowledge that they are permitting "select" non-governmental organizations ("NGOs") to identify "particularly vulnerable" family units for whom DHS exercises its discretion to except from the October Order. Defendants' App. 21. Thus, contrary to Defendants' assertion that they are exercising their discretion under the October Order to except certain covered aliens from the Order on a case-by-case, individualized basis (Defs.' Opp'n at 32), it appears that DHS is not exercising its own judgment but that of "select" NGOs. Defendants' authority to delegate that sovereign screening function to NGOs in Mexico is dubious at best. *Compare Texas v. Rettig*, 987 F.3d 518, 532 (5th Cir. 2021) ("Agencies may subdelegate to private entities *so long as the entities function subordinately to the federal agency and the federal agency has authority and surveillance over their activities*.") (internal quotation marks and alterations omitted, emphasis added) *with United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004) (federal agency officials may not subdelegate their decision-making authority to outside entities— private or sovereign—absent affirmative evidence of authority to do so). Had

Defendants undertaken a rulemaking—or issued a request for proposals or formed an advisory committee—these issues would have surfaced and could have been lawfully resolved.

In any event, even if certain countries will not accept the return of aliens being expelled under the October Order (or are just imposing practical limitations that delay the return of such aliens), neither reason justifies the introduction of such aliens into the United States contrary to the October Order. The October Order prohibits the introduction of such aliens into the United States. The prohibition is not conditional and does not depend on the cooperation of any foreign country. Instead, the October Order establishes an absolute prohibition on introducing covered aliens, regardless of whether they are otherwise amenable to processing under Title 8.

Finally, Defendants argue that 8 U.S.C. § 1252(f)(1) strips this Court of jurisdiction to enjoin the government for failing to comply with 8 U.S.C. § 1222(a). Defs.' Opp'n at 34-35. Section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain *the operation of the provisions of part IV of this sub-chapter*, as amended by [IIRIRA], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." 8 U.S.C. § 1252(f)(1) (emphasis added). Section 1222 of Title 8 falls within Part IV of "this sub-chapter."[7] Defendants' reliance on *Hamama v. Adducci*, 946 F.3d 875 (6th Cir. 2020), is misplaced.

---

[7] "[P]art IV of this sub-chapter" refers to Part IV of sub-chapter II of chapter 12 of Title 8 of the United States code and consists of 8 U.S.C. §§ 1221-1232.

18

The class-wide injunctions in *Hamama* involved aliens who were challenging their detention under 8 U.S.C. §§ 1225(b) and 1226(a), (c). *See* 946 F.3d at 876-77. In that case, the aliens were challenging the operation of mandatory detention statutes within Part IV of "this sub-chapter [II]." Here, in contrast, Texas is challenging the government's failure to follow or comply with 8 U.S.C. § 1222(a). In other words, Texas is not challenging the *operation* of section 1222(a), but instead is asking this Court to enjoin the government to follow or comply that statute. Because Texas does not seek to enjoin "the operation" of section 1222(a), section 1252(f)(1) does not bar Texas's challenge to the government's failure to comply with that section:

> *[A]ll* of these limiting provisions concern limits to potential suits brought [by aliens themselves. To suggest Congress in enacting those express limitations was also seeking to bar suits from States is a bridge too far.

*Texas v. United States*, 2021 U.S. Dist. LEXIS 33890, *83-84 (S.D. Tex. Feb. 23, 2021) (emphasis in original).

Defendants raise three arguments against section 1222(a)'s application here: (1) the section applies only at ports of entry, (2) its use of the mandatory "shall" for detaining aliens arriving from areas with epidemics of public-health significance actually means the permissive "may" subject to enforcement discretion, and (3) it requires detaining aliens only for a "sufficient time." *See* Defs.' Opp'n at 35. All three arguments lack merit. First, the port-of-entry limitation does not apply during epidemics:

> [1] For the purpose of determining whether *aliens …* *arriving at ports* of the United States belong to any of the classes inadmissible under this Act, by reason of being afflicted with any of the diseases or mental

19

> or physical defects or disabilities set forth in section 212(a),
>
> or
>
> [2] whenever the Attorney General has received information showing that *any aliens* are coming from a country or have embarked at a place where any of such diseases are prevalent or epidemic,

such aliens shall be detained for a sufficient time to enable the immigration officers and medical officers to subject such aliens to observation and an examination sufficient to determine whether or not they belong to inadmissible classes.

8 U.S.C. § 1222(a) (emphasis and formatting added). To conform with not only the statute's public-health purpose but also grammar rules for serial appositions and parallel section structure, this port-of-entry limitation on *some* aliens does not apply to the epidemic provisions applicable to *any* aliens. Absent any reason to interpret "shall" differently, "the mandatory 'shall' means what it says." *Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 135 (5th Cir. 1987). CDC guidelines for COVID-19 provide the "sufficient time" for COVID-19: 14 days quarantine. Compl. at 6 (¶ 26).

## III.   TEXAS WILL SUFFER IRREPARABLE HARM ABSENT A PRELIMINARY INJUNCTION FROM THIS COURT.

The irreparability of Texas's harms is the only other disputed injunction factor.[8] The impacts of additional COVID infections from Defendants' unlawful

---

[8] The other two factors hinge which party correctly interprets the merits (i.e., if Texas correctly interprets the merits, Defendants have no equities to balance and their unlawful actions do not define the public interest).

actions constitute irreparable harm. *Barrera v. Wolf*, 455 F.Supp.3d 330, 340-41 (S.D. Tex. 2020) (discussing "serious irreparable harm if [plaintiffs] are infected, in the form of severe illness, long-term health effects, and possibly death"). Contrary to Defendants assertions, Defs.' Opp'n at 20, 38, the risks of COVID infections from aliens arriving from Mexico have increased, not subsided, since February. In the last two months, Mexico has experienced a third wave of coronavirus infections and deaths. The new strain of the virus that prompted the April restriction of travel from India is suspected of being markedly more deadly than the original strain,[9] those who have not been vaccinated face greater risk from the new variant,[10] and this heightens the gravity of the danger to Texans resulting from Defendants' actions. But even decreasing harms would remain irreparable.

In addition, Texas has identified significant financial injury from Defendants' failure to follow federal law and their own rules. If injured plaintiffs cannot collect monetary damages—for example, because the defendant is immune from monetary liability—those injuries are irreparable. *Teladoc, Inc. v. Tex. Med. Bd.*, 112 F.Supp.3d 529, 543 (W.D. Tex. 2015) ("possibility that the [government defendant] will assert immunity from monetary damages as a state agency also weighs in favor of finding

---

[9] Cheryl Teh, *Researchers are investigating if a COVID-19 with multiple mutations found in India is more deadly and resistant to existing vaccines*, BUSINESS INSIDER, https://www.businessinsider.com/covid-triple-mutant-in-india-could-be-much-more-deadly-2021-4 (Apr 23, 2021).

[10] *See* Luke Money & Rong-Gong Lin II, *Unvaccinated people face growing danger as Delta variant stalls herd* immunity, L.A. TIMES, https://www.latimes.com/california/story/2021-07-12/options-as-contagious-delta-variant-stalls-herd-immunity (July 12, 2021).

Plaintiffs face irreparable harm"); *cf. Aspen Tech., Inc. v. M3 Tech., Inc.*, 569 F. App'x 259, 273 (5th Cir. 2014) (irreparable injury where there is "substantial probability that [plaintiff] would be unable to collect a judgment") (alterations omitted). For these reasons, Texas will suffer irreparable harm without immediate injunctive relief.

## **CONCLUSION**

Texas's motion for preliminary injunction should be granted.

Dated: July 12, 2021                              Respectfully submitted,

KEN PAXTON                                        */s/ Aaron F. Reitz*
Attorney General of Texas                         AARON F. REITZ
                                                  *Lead Counsel*
BRENT WEBSTER                                     Deputy Attorney General for Legal
First Assistant Attorney General                  Strategy
                                                  Texas Bar No. 24105704
                                                  P.O Box 12548
                                                  Austin, Texas 78711-2548
                                                  Phone: (512) 936-1989
                                                  aaron.reitz@oag.texas.gov

                                                  CHRISTOPHER J. HAJEC
                                                  MATT A. CRAPO
                                                  Immigration Reform Law Institute
                                                  25 Massachusetts Ave., NW, Suite 335
                                                  Washington, DC 20001
                                                  (540) 205-7986
                                                  litigation@irli.org

                                                  MATTHEW G. WHITAKER
                                                  America First Legal Foundation
                                                  300 Independence Avenue SE
                                                  Washington, DC 20003
                                                  (202) 964-3721
                                                  info@aflegal.org

**CERTIFICATE OF SERVICE**

I certify that on July 12, 2021, the foregoing instrument was filed electronically via the Court's CM/ECF system causing electronic service upon all counsel of record.

*/s/ Aaron F. Reitz*
AARON F. REITZ