EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS,<br><br>  Plaintiff,<br><br>v.<br><br>JOSEPH R. BIDEN, JR., *et al.*,<br><br>  Defendants. | § § § § § § § § § § § § § § § | Case No. 4:21-cv-00579-P |

**BRIEF *AMICUS CURIAE* OF THE STATE OF MISSOURI IN SUPPORT OF PLAINTIFF STATE OF TEXAS'S MOTION FOR A PRELIMINARY INJUNCTION**

  I.  **Interests of Amicus Curiae**

As the State of Missouri's chief legal officer, Attorney General Eric Schmitt is vested with both sweeping statutory authority and broad common law powers to litigate, intervene, and defend in any legal action involving the interests of the State of Missouri and its citizens. *See, e.g.*, MO. REV. STAT. § 27.060; *Missouri v. Homesteaders Life Ass'n*, 90 F.2d 543, 545 (8th Cir. 1937); *Thatcher v. City of St. Louis*, 343 Mo. 597, 602, 122 S.W.2d 915, 916 (1938) (per curiam) ("The duties of the Attorney General at common law were so varied and numerous that they have perhaps never been specifically enumerated.").

The ongoing crisis at the Southern border has inflicted serious costs on Missouri as organized crime and drug cartels prey on migrant communities and

children through human trafficking, violence, extortion, sexual assault, and exploitation. These crimes directly affect Missouri, especially given Missouri's strong focus on combating human trafficking throughout the State.

Because "[h]uman trafficking is a form of modern slavery that occurs in every state, including Missouri[,]"[1] the Attorney General of Missouri has created a Human Trafficking Task Force that is designed and structured to identify, respond to, investigate, and ultimately eradicate human trafficking in Missouri.[2] The additional costs of educating, providing healthcare, and other social services for trafficking victims or illegal aliens further burden Missouri and its taxpayers.

Missouri thus strongly believes that a preliminary injunction here in favor of Texas would promote the public interest. *See Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 3603341, at *26 (N.D. Tex. Aug. 13, 2021) (Kacsmaryk, J.) (the public interest favored permanent injunctive relief for Missouri and Texas "because the public has an interest in stemming the flow of illegal immigration" and "in the enforcement of immigration laws") (cleaned up).

For many of these reasons, Missouri, alongside Texas, recently and successfully obtained a final judgment setting aside the Biden Administration's unlawful termination of the Migrant Protection Protocols, as well as a permanent nationwide injunction reinstating that program. Both the Fifth Circuit and U.S.

---

[1] *Missouri*, NATIONAL HUMAN TRAFFICKING HOTLINE, https://humantraffickinghotline.org/state/missouri (last visited Sept. 17, 2021).

[2] *Human Trafficking Task Force*, OFFICE OF THE MISSOURI ATTORNEY GENERAL, https://ago.mo.gov/home/human-trafficking/task-force (last visited Sept. 17, 2021).

Supreme Court have denied the federal government's requests for a stay pending appeal. *See id.* at *27-28, *denying stay pending appeal*, No. 21-10806, 2021 WL 3674780, at *1 (5th Cir. Aug. 19, 2021) (per curiam), *denying stay pending appeal*, No. 21A21, 2021 WL 3732667, at *1 (U.S. Aug. 24, 2021).

The Biden Administration's abandonment of its mandatory duties under Title 42—like its attempted abandonment of MPP—gives Missouri an interest in this case challenging government action that frustrates the enforcement of immigration laws.

## II.     Argument

### A. Missouri supports a preliminary injunction to prevent the perpetuation of unlawful agency action by not detaining COVID-positive illegal aliens under federal law.

A preliminary injunction here in favor of Texas would undoubtedly promote the public interest in avoiding the "perpetuation of unlawful agency action." *Texas*, 2021 WL 3674780, at *15 (quotation marks omitted). The Court should issue a preliminary injunction to protect Missourians by avoiding the irreparable costs the State will incur if the federal government does not detain COVID-positive illegal aliens.

DHS is required to detain aliens until it determines whether they are inadmissible due to COVID-19. Inadmissible aliens are those who have a "communicable disease of public health significance," as defined by "regulations prescribed by the Secretary of Health and Human Services." 8 U.S.C. § 1182(a)(1)(A)(i). Aliens must be detained to determine whether they are inadmissible for public-health reasons under two circumstances. *First*, they must

be detained if DHS has reason to believe they are "afflicted with" such a disease. 8 U.S.C. § 1222(a). *Second*, they must be detained if DHS "has received information showing that [they] are coming from a country or have embarked at a place" where such a disease is "prevalent or epidemic[.]" *Id.* This detention must enable "immigration officers and medical officers" to conduct "observation and an examination sufficient to determine whether" the aliens are inadmissible. *Id.*

DHS violates federal law by catching and releasing COVID-positive illegal aliens. The release of aliens who have not been treated or screened for COVID-19 not only violates federal law, but also increases the risk of irreparable harm to Missouri because, like in the MPP case, "at least some [aliens] will certainly seek … healthcare services from the state." *Texas*, 2021 WL 3674780, at *5. Missouri has "incurred and will continue to incur costs associated with the border crisis, at least part of which … is traceable to" undoing successful immigration policies. *Id.*

The likelihood of increased treatments is certain. DHS's Assistant Secretary for Border and Immigration Policy, David Shahoulian, has attested to the increased risk of COVID-19 infections posed by permitting illegal aliens into the United States from the Southern border: Due to "the highly transmissible COVID-19 Delta variant," the "rates at which encountered noncitizens are testing positive for COVID-19 have increased significantly in recent weeks." ECF No. 69 at 78. And indeed, "the rate of infection among CBP officers … recently began increasing again, even though the percentage of officers and agents who have been fully vaccinated has grown significantly since January," leading "to increasing numbers of CBP

personnel being isolated and hospitalized." *Id.* The threat to Missouri is no less.[3]

Despite President Biden's recent and unprecedented announcement to impose a federal mandate requiring U.S. citizens to be vaccinated against COVID-19,[4] this mandate does not apply to illegal aliens. Indeed, on September 10, 2021, White House Press Secretary Jen Psaki confirmed that COVID-19 vaccinations are not required for unauthorized aliens at the border. Psaki refused, however, to explain *why* the Biden Administration would require such vaccinations of American citizens and aliens authorized to work in the United States, but at the same time give illegal aliens the right to choose whether to be vaccinated.[5] Not even Francis Collins, Director of the National Institutes of Health, could defend this inconsistency.[6]

There is also no indication that the federal government imposes weekly COVID-19 testing requirements on aliens who have unlawfully entered the United States, as it plans to do for unvaccinated Americans covered by President Biden's

---

[3] *See* U.S. Dep't of Homeland Sec., Office of Inspector Gen., *DHS Needs to Enhance Its COVID-19 Response at the Southwest Border* (Sept. 10, 2021), https://www.oig.dhs.gov/sites/default/files/assets/2021-09/OIG-21-60-Sep21.pdf ("Erosion of Title 42 authority [i.e., crafting exemption for unaccompanied minors] has had a significant negative impact on CBP's COVID-19 mitigation measures and creates increased risk for CBP personnel, migrants in custody, and local communities.").

[4] Joseph Biden, *Remarks at the White House* (September 9, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/.

[5] Andrew Mark Miller, *"Psaki stands by having employer vaccine mandate while illegal immigrants get a pass,"* FOX NEWS (September 10, 2021), https://www.foxnews.com/politics/psaki-stands-by-employer-vaccine-mandate-while-illegal-immigrants-remain-unvaccinated-thats-correct.

[6] Transcript, *'Fox News Sunday'* (Sept. 19, 2021), https://www.foxnews.com/transcript/fox-news-sunday-on-september-19-2021.

forthcoming mandate.[7] In other words, while imposing far-reaching vaccine mandates on U.S. *citizens*, the Administration gives *illegal aliens* a complete pass.

Although DHS offers vaccination to aliens it apprehends unlawfully entering the United States, it does not insist that they be vaccinated—even if they are being released into the U.S., rather than being immediately deported. Many refuse: reporting indicates that roughly 30% decline the offer of vaccination.[8] That is so even though COVID-19 is prevalent among migrants: "more than 18% of migrant families who recently crossed the border tested positive for COVID before being released by Border Patrol. Another 20% of unaccompanied minors tested positive for the virus."[9]

At bottom, aliens unlawfully crossing into the United States are not bound by any federal vaccination requirement whatsoever. Their rights to choose to be vaccinated—or not—command the unadulterated respect of Defendants. Those of U.S. citizens and legal aliens: not so much.

This distinction between those lawfully in the country and those not lawfully in the country is simply irrational and indefensible. And unvaccinated illegal aliens released directly into the United States (where most will remain) impose irreparable

---

[7] *See supra*, at n.3 (CBP not "require[d] … to conduct COVID-19 testing at … ports of entry" and its "process to obtain testing for migrants for COVID-19 may not always be operationally feasible, especially during an influx of migrant crossings at the southwest border").

[8] Michael Lee, *"Biden's vaccination mandate doesn't include illegal immigrants,"* Fox News (September 9, 2021), https://www.foxnews.com/politics/biden-plan-for-forced-vaccinations-doesnt-include-illegal-immigrants.

[9] *Id.*

fiscal harms on Missouri. *Compare Texas*, 2021 WL 3674780, at *5 ("at least some MPP-caused immigrants will certainly seek … healthcare services from the state. And the States have incurred and will continue to incur costs associated with the border crisis, at least part of which the district court found is traceable to rescinding MPP. The causal chain is easy to see, and the Government does not meaningfully contest this point."). The Court should thus issue a preliminary injunction.

> B.  **Missouri supports a preliminary injunction to combat human trafficking.**

A preliminary injunction here in favor of Texas would also undoubtedly promote the public interest in combating human trafficking. *See Texas*, 2021 WL 3603341, at *26 (the public interest favored permanent injunctive relief for Missouri and Texas "because the public has an interest in stemming the flow of illegal immigration" and "in the enforcement of immigration laws") (cleaned up).

The effects of unlawful immigration do not stop at the Southern border. Indeed, "[t]he pervasiveness of federal regulation does not diminish the importance of immigration policy to the States[,]" which "bear[] many of the consequences of unlawful immigration." *Arizona v. United States*, 567 U.S. 387, 397 (2012). Uncontested expert evidence in prior litigation involving these same States unequivocally stated that

> Destination countries with weak border security and lax immigration policies in effect create an open door for traffickers to enter and do business. It creates more opportunity for them to make money and in turn motivates traffickers to recruit more victims from origin countries. Put simply, traffickers would not invest the time and resources to groom, recruit and transport large numbers of potential victims to the U.S. border if they had reason to believe a crossing would not be possible.

7

There's no money in that.

*Texas v. Biden*, No. 2:21-CV-067-Z, ECF No. 54-2 at 110 (Declaration of Alison Phillips).

With its intersection of major interstate highway routes, Missouri is a major destination and hub for human trafficking. Missouri's ongoing fight against human trafficking—including the exploitation and trafficking of vulnerable migrants—likewise provides it with justiciable interests that fall within the zone of interests of federal statutes on immigration-related policy. Indeed, irresponsible border-security policies that invite and encourage human traffickers to exploit vulnerable border-crossing victims irreparably injure Missouri and Texas.

Judge Kacsmaryk recently found Missouri and Texas had cognizable interests in combating the trafficking of vulnerable migrants that would undoubtedly result from the Biden Administration's unlawful termination of MPP. Specifically,

> Some aliens who would have otherwise been enrolled in MPP are victimized by human traffickers in Texas. Aliens are particularly susceptible to being trafficked. Increasing the number of aliens present in the United States, including those claiming asylum, is likely to increase human trafficking. Missouri is likewise a destination and transit State for human trafficking of migrants from Central America who have crossed the border illegally. Human trafficking causes fiscal harm to Texas and Missouri.

*Texas*, 2021 WL 3603341, at *10 (cleaned up).

While the precise costs of combating human trafficking will vary from state to state, Missouri and Texas will inevitably face these costs. For example, a report from 2016 concluded that Texas spends approximately $6.6 billion in lifetime expenditures on minor and youth sex trafficking victims, and that traffickers exploit approximately

8

$600 million annually from victims of labor trafficking in Texas (i.e., lost wages), which necessarily results in corresponding lost tax revenue to the State.[10] Missouri faces comparable costs.

The Biden Administration's abandonment of its mandatory duties under Title 42 makes matters worse. Relevant here,

> Unaccompanied and undocumented minors who enter the United States via smugglers are extremely vulnerable to traffickers and other abusers. There is no one to file a missing child report, or issue an Amber Alert. There is no record that the child is even here in this country. No one even knows to look. In the eyes of a trafficker, children in these circumstances make ideal victims.

*Texas v. Biden*, No. 2:21-CV-067-Z, ECF No. 54-2 at 112 (Phillips Decl.).

Dismantling another one of the Trump Administration's successful immigration policies will undoubtedly make these States' fights against human trafficking more difficult, as it will directly contribute to the massive uptick in illegal immigration through Central America, Mexico, and to the U.S. Southern border. As Judge Kacsmaryk recently found,

> the termination of MPP has contributed to the current border surge. DHS previously acknowledged that MPP implementation contributed to decreasing the volume of inadmissible aliens arriving in the United States on land from Mexico. MPP removed the perverse incentives which enticed aliens with a free ticket into the United States.

*Texas*, 2021 WL 3603341, at *9 (cleaned up).

The Fifth Circuit observed that Judge Kacsmaryk's factual findings were

---

[10] THE UNIVERSITY OF TEXAS AT AUSTIN, SCHOOL OF SOCIAL WORK: INSTITUTE ON DOMESTIC VIOLENCE AND SEXUAL ASSAULT, HUMAN TRAFFICKING BY THE NUMBERS (2016), https://globalinitiative.net/wp-content/uploads/2018/01/Human-trafficking-by-the-numbers.pdf.

"largely uncontested"; "the termination of MPP has increased and will continue to increase the number of aliens being released into the United States, and this increase has imposed and will continue to impose harms on Plaintiff States Texas and Missouri." *Texas*, 2021 WL 3674780, at *4 (cleaned up).

Before Judge Kacsmaryk's injunction went into effect August 24, 2021, border crossings have only increased for seven consecutive months—with "total encounters this fiscal year … likely [being] the highest ever recorded[.]" *Texas*, 2021 WL 3603341, at *9 n.7.[11]  Reviving successful immigration policies from the prior Administration is necessary to deter individuals from attempting to cross the border illegally, making themselves vulnerable to human traffickers.

Thus, the Biden's Administration's abandonment of its duties under Title 42 is a step backwards and will only revive the perverse incentives long provided by the catch-and-release regime.  The Court should thus issue a preliminary injunction.

### III.   Conclusion.

The Court should grant Plaintiff State of Texas's motion for a preliminary injunction.

---

[11] U.S. Customs and Border Protection, *Southwest Land Border Encounters* (Sept. 16, 2021), https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General of Missouri

/s/ *Jesus A. Osete*
JESUS A. OSETE, #69267MO*
*Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
Supreme Court Building
207 West High Street
P.O. Box 899
Jefferson City, Missouri 65102
Tel. (573) 751-1800
Fax (573) 751-0774
Jesus.Osete@ago.mo.gov

*Counsel for Amicus Curiae*

**Pro hac vice* motion forthcoming

### CERTIFICATE OF SERVICE

I certify that on September 20, 2021, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

/s/ *Jesus A. Osete*
*Counsel for Amicus Curiae*

11