IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

STATE OF TEXAS,

       Plaintiff,

v.

JOSEPH R. BIDEN, JR. et al.,

       Defendants.

Civil Action No. 4:21-CV-579-P

## <u>DEFENDANTS' MOTION TO DISQUALIFY</u>

Chad E. Meacham
Acting United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

# Table of Contents

I. Introduction.................................................................................................................. 1

II. Background.................................................................................................................. 1

    A. The government takes various actions under CDC's Title 42
        authority during the COVID-19 pandemic. ............................................... 1

    B. Mr. Hamilton was involved as a DOJ attorney in legal matters
        relating to Title 42.................................................................................... 4

    C. Mr. Hamilton's involvement in the current lawsuit................................. 7

III. Argument and Authorities......................................................................................... 8

    A. Relevant legal standards ......................................................................... 8

    B. Mr. Hamilton should be disqualified because he obtained
        confidential government information relevant to this case and worked on
        the same "matter" while serving as an attorney at DOJ...................... 11

    C. Disqualification of Mr. Hamilton's firm is also required because
        the conflict is imputed.......................................................................... 20

IV. Conclusion .............................................................................................................. 21

## Table of Authorities

### Cases

*Azad v. Nationwide Prop. & Cas. Ins. Co.*,
   No. 3:19-CV-312-E-BH, 2019 WL 10888765 (N.D. Tex. Nov. 12, 2019).....................8, 9

*Babineaux v. Foster*,
   No. 04-1679, 2005 WL 711604 (E.D. La. Mar. 21, 2005) .................................................18

*FDIC v. U.S. Fire Ins. Co.*,
   50 F.3d 1304, 1312 (5th Cir. 1995) ...........................................................................8–9

*Flores v. Barr*,
   No. CV-85-4544, 2020 WL 5491445 (C.D. Cal. Sept. 4, 2020) .........................................4

*Great Divide Wind Farm 2 LLC v. Aguilar*,
   426 F. Supp. 3d 949 (D.N.M. 2019) ...............................................................................17

*In re de Brittingham*,
   319 S.W.3d 95 (Tex. App.—San Antonio 2010, orig. proceeding) .................................18

*In re Dresser Indus., Inc.*,
   972 F.2d 540, 543 (5th Cir. 1992) .....................................................................................9

*In re ProEducation Int'l, Inc.*,
   587 F.3d 296, 299 (5th Cir. 2009) .....................................................................................9

*In re White*,
   11 A.3d 1226 (D.C. 2011) ....................................................................................17, 18, 19

*J.B.B.C. v. Wolf*,
   No. 20-CV-1509, 2020 WL 6041870 (D.D.C. June 26, 2020).............................................3

*John Crane Prod. Sols., Inc. v. R2R & D, LLC*,
   No. 3:11-CV-3237-D, 2012 WL 3453696 (N.D. Tex. Aug. 14, 2012) ..............................9

*Petition of Vt. Elec. Power Producers, Inc.*,
   683 A.2d 716 (Vt. 1996).....................................................................................................18

*P.J.E.S. v. Wolf*,
   502 F. Supp. 3d 492 (D.D.C. 2020).....................................................................................4

*Sec. Investor Prot. Corp. v. Vigman*,
   587 F. Supp. 1358 (C.D. Cal. 1984) .................................................................................19

*United States v. Philip Morris Inc.*,
    312 F. Supp. 2d 27 (D.D.C. 2004) ...........................................................................11, 14

*United States v. Smith*,
    995 F.2d 662 (7th Cir. 1993) .........................................................................................19

*United States v. Villaspring Health Care Ctr., Inc.*,
    No. 3:11-43-DCR, 2011 WL 5330790 (E.D. Ky. Nov. 7, 2011)......................................14

Statutes, Rules, and Other Authorities

18 U.S.C. § 207(*i*)(2) ........................................................................................................19

42 C.F.R. § 71.40 .................................................................................................................1

42 U.S.C. § 265 ....................................................................................................................1

85 Fed. Reg. 17,060 (Mar. 26, 2020).............................................................................2, 5

85 Fed. Reg. 65,806 (Oct. 16, 2020)..........................................................................2, 3, 7

85 Fed. Reg. 56,424 (Sept. 11, 2020) ...............................................................................2

86 Fed. Reg. 42,828 (Aug. 5, 2021).....................................................................................2

ABA Formal Ethics Op. 97-409 (1997)......................................................................11, 13

N.D. Tex. Local Civ. R. 83.8(e)............................................................................................9

Model Rules of Prof'l Conduct R. 1.9(c)......................................................................10, 13

Model Rules of Prof'l Conduct R. 1.11(a)..............................................................9, 15, 17, 18

Model Rules of Prof'l Conduct R. 1.11(b) ........................................................................20

Model Rules of Prof'l Conduct R. 1.11(e)........................................................................16

Model Rules of Prof'l Conduct R. 1.11 cmt. 10 ................................................................16

Tex. Discpl. Rules of Prof'l Conduct R. 1.05(a) ..............................................................12

Tex. Discpl. Rules of Prof'l Conduct R. 1.05(b)(3)..........................................................12

Tex. Discpl. Rules of Prof'l Conduct R. 1.10(a) ...............................................10, 15, 17–18, 18

Tex. Discpl. Rules of Prof'l Conduct R. 1.10(b) ...............................................................20

Tex. Discpl. Rules of Prof'l Conduct R. 1.10(c) ...............................................10, 12, 15

Tex. Discpl. Rules of Prof'l Conduct R. 1.10(d) ............................................................20

Tex. Discpl. Rules of Prof'l Conduct R. 1.10(f) ............................................................16

Tex. Discpl. Rules of Prof'l Conduct R. 1.10(g) ...........................................................12

Tex. Discpl. Rules of Prof'l Conduct R. 1.10(h) ...........................................................15

Tex. Discpl. Rules of Prof'l Conduct R. 1.10 cmt. 3 .....................................................11

# I.      Introduction

One of the State of Texas's attorneys in this case, Gene Hamilton, previously served as a counselor for the Attorney General of the United States and, merely months before this suit was filed, worked on legal issues arising from the same government action—related to the prohibition of the introduction of certain noncitizens arriving from Mexico and Canada into the United States in light of the COVID-19 pandemic—that is at issue in this case.  As discussed herein, Mr. Hamilton's prior work in his capacity as a U.S. Department of Justice (DOJ) attorney creates a conflict of interest that precludes him from representing Texas in this action in a position adverse to the government on those same issues.  The government has discussed this matter with Mr. Hamilton and other counsel for Texas in this lawsuit, but he and his firm have declined to withdraw from the case.  Accordingly, the government requests that the Court disqualify Mr. Hamilton from representing Texas and, because the conflict is imputed to his firm, also disqualify his firm.

# II.      Background

## A.      The government takes various actions under CDC's Title 42 authority during the COVID-19 pandemic.

As the Court is aware, this case arises out of actions taken by the Centers for Disease Control and Prevention (CDC) pursuant to 42 U.S.C. § 265 and its implementing regulation, 42 C.F.R. § 71.40, [hereinafter "Title 42 authority"] to prohibit the introduction into the United States of certain persons determined by CDC to increase the serious danger of the spread of a quarantinable communicable disease.  As summarized in one of the government's prior filings in the case:

> In light of the COVID-19 pandemic, CDC exercised its Title 42
> authority in March 2020 by issuing an interim final rule and an
> order temporarily suspending the introduction into the country of

certain noncitizens traveling from Canada and Mexico. *See* 85
Fed. Reg. 17,060 (Mar. 26, 2020). The March 2020 order
authorized the expulsion of covered noncitizens to the country
from which they entered the United States, their country of origin,
or another location as quickly as practicable. *Id.* at 17,067. With
certain exceptions, the order applied to "persons traveling from
Canada or Mexico (regardless of their country of origin) who
would otherwise be introduced into a congregate setting" at or near
the border—typically noncitizens "who lack valid travel
documents." *Id.* at 17,061. Such individuals, the order explained,
may spend hours or days in congregate settings while undergoing
immigration processing, but the ports of entry and U.S. Border
Patrol stations are "not designed for, and are not equipped to,
quarantine, isolate, or enable social distancing." *Id.* The March
2020 order was subsequently extended multiple times.

In October 2020, CDC issued a new Title 42 order to replace the
March 2020 order (as amended and extended). *See* 85 Fed. Reg.
65,806 (Oct. 16, 2020). (A month earlier, CDC had promulgated a
final rule to establish a new regulation governing the use of its
Title 42 authority—the October order was then issued pursuant to
that regulation. *See* 85 Fed. Reg. 56,424 (Sept. 11, 2020)
(establishing 42 C.F.R. § 71.40).) The October order explained
that it was "substantially the same as the amended and extended
March 20, 2020 Order" and was necessary to continue to protect
against the introduction of COVID-19 into the ports of entry and
U.S. Border Patrol stations "at or near the United States borders
with Canada and Mexico." 85 Fed. Reg. at 65,808. The order also
noted the "dynamic nature" of the COVID-19 pandemic and
explained that CDC "retain[ed] the authority to extend, modify, or
terminate the Order, or implementation of this Order, at any time
as needed to protect public health." *Id.* at 65,809 n.9, 65,812.

(Doc. 28 at 4–5.) More recently, CDC has released a new Title 42 order on August 3, 2021. *See*

86 Fed. Reg. 42,828 (Aug. 5, 2021). This new CDC order determined that an order under Title

42 "remains necessary to protect U.S. citizens, U.S. nationals, lawful permanent residents,

personnel and noncitizens at the ports of entry (POE) and U.S. Border Patrol stations, and

destination communities in the United States during the COVID-19 public health emergency."

*Id.* at 42,829–30. Consequently, the order continues to prohibit the introduction of "covered

noncitizens" into the United States along the U.S. land and adjacent coastal borders (in a manner

similar to CDC's prior Title 42 order), while excepting unaccompanied children from Title 42 expulsions (as determined by CDC in a July 2021 order that is incorporated within the August 2021 order).

As the CDC orders make clear, pursuant to 42 U.S.C. § 268, CDC (which is a component within the Department of Health and Human Services (HHS)), has requested that the U.S. Department of Homeland Security (DHS) implement CDC's Title 42 orders "because CDC does not have the capability, resources, or personnel needed to do so." *See, e.g.*, 85 Fed. Reg. at 65,812. Indeed, because DHS through its component agencies U.S. Customs and Border Protection (CBP) and U.S. Immigration and Customs Enforcement (ICE) has a front-line role in enforcing the immigration laws and is usually the arm of the government that first comes into contact with noncitizens possibly subject to the Title 42 order, CDC "consulted with DHS," among others, before issuing the Title 42 orders. *See, e.g.*, *id.* And as part of the consultation, DHS also developed operational plans for implementing the orders. *Id.*

CDC's exercise of its Title 42 authority and DHS's related efforts in enforcing CDC's orders and otherwise continuing to administer the immigration laws during the period of the COVID-19 pandemic have required consideration of a host of legal issues. In addition to legal work associated with preparing the relevant CDC orders (including CDC's initial order issued in March 2020, its subsequent extensions and amendments, and a substantially similar replacement order issued in October 2020) and with the government's implementation of those orders, there were a number of legal challenges to the government's actions relating to CDC's Title 42 orders. These include the following:

- *J.B.B.C. v. Wolf*, No. 20-CV-1509 (D.D.C.), in which an unaccompanied child challenged the government's attempt to expel him from the country under Title 42. *See J.B.B.C. v. Wolf*, No. 20-CV-1509, 2020 WL 6041870 (D.D.C. June 26, 2020) (transcript of oral ruling).

- *P.J.E.S. v. Wolf*, No. 20-CV-2245 (D.D.C.), which involves a similar challenge to the application of Title 42 proceedings to unaccompanied children, and was brought on behalf of a class of unaccompanied children.  *See P.J.E.S. v. Wolf*, 502 F. Supp. 3d 492 (D.D.C. 2020); *P.J.E.S. v. Mayorkas,* No. 20-5257 (D.C. Cir.).  In November 2020, the district court in *P.J.E.S.* enjoined the government from expelling unaccompanied children from the United States pursuant to CDC's October 2020 Title 42 order.  That injunction was then appealed to the D.C. Circuit and was stayed pending appeal by that court on January 29, 2021.  In February 2021, CDC issued a notice stating that it had decided to temporarily except unaccompanied children from expulsion from the United States under the October order, in effect continuing the same practice that the *P.J.E.S.* district court had required until its injunction was stayed.  The February 2021 notice was then challenged by Texas in this case.

- *Texas Civil Rights Project v. Wolf*, 1:20-cv-02035 (D.D.C.), which challenged the application of Title 42 to certain unaccompanied children who were held at some point in a Texas hotel.

- *G.Y.J.P v. Wolf*, 1:20-cv-01511 (D.D.C.), which challenged the application of the Title 42 order to an unaccompanied child who was expelled to her home country pursuant to the order.

- *Flores v. Barr*, No. CV-85-4544 (C.D. Cal.), in which the plaintiffs challenged the government's methods for holding minors under CDC's Title 42 order as violative of a prior class action settlement agreement relating to the treatment of children in immigration custody.  *See Flores v. Barr*, No. CV-85-4544, 2020 WL 5491445 (C.D. Cal. Sept. 4, 2020).

## B.   Mr. Hamilton was involved as a DOJ attorney in legal matters relating to Title 42.

Mr. Hamilton is currently an attorney with the America First Legal Foundation and is one of six attorneys who have made appearances for Texas in this action.[1]  Previously, Mr. Hamilton was a DOJ attorney from October 29, 2017 to January 20, 2021.  During that time, Mr. Hamilton was closely involved in a number of the legal issues relating to the government's activities under

---

[1] These attorneys are, in addition to Mr. Hamilton, Aaron F. Reitz and Leif Olson (both attorneys within the Texas Office of the Attorney General), Matthew G. Whitaker (of the America First Legal Foundation) and Christopher J. Hajec and Matt A. Crapo (of the Immigration Reform Law Institute).  The government notes that Mr. Whitaker was also a DOJ attorney, from November 2018 to February 2019, which predated the inception of the Title 42 issues.  As discussed below, his disqualification is sought solely because of imputation.

CDC's Title 42 authority and related issues concerning DHS's role, including as follows[2]:

- On March 13, 2020, as CDC was in the process of finalizing its initial Title 42 order, Mr. Hamilton was among a group of government officials provided with a "concept of operations" (CONOPS) document detailing DHS's plans for implementing and enforcing CDC's anticipated Title 42 order. This document was marked "privileged," "attorney work product," and "deliberative." The email by which this document was transmitted indicates that the persons on the email had participated in a conference call earlier that same day, and that a follow-up call would be held on the following day to discuss DHS's "operations plan."

- On March 20, 2020, the day that CDC issued its initial Title 42 order in connection with the COVID-19 pandemic,[3] DHS provided a group of government officials, including Mr. Hamilton, with a draft version of a CBP operational document setting forth how CBP planned to implement the CDC order. Mr. Hamilton responded later that same day with comments on the draft, and in another email asked DHS about the classification of the document and was informed that it was "internal" and "LES," i.e., law enforcement sensitive.

- On March 27, 2020, Mr. Hamilton was provided with an internal DHS document marked "law enforcement sensitive" that provided various pieces of data collected by DHS detailing its "Title 42 efforts." Mr. Hamilton circulated this document to a group of DOJ attorneys offering his view as to the usefulness of the document in connection with any legal challenges to the government's Title 42 activities.

- On June 24, 2020, Mr. Hamilton was provided with an internal memorandum prepared by CDC setting forth the "pros" and "cons" of whether to renew and keep in place CDC's March 2020 Title 42 order. In an email to several other DOJ attorneys, Mr. Hamilton expressed his view as to the usefulness of the information contained in the memorandum "in litigation."

- On June 26, 2020, Mr. Hamilton exchanged several emails with a DHS attorney in which the two discussed COVID-19 data obtained from CBP for possible use in "DDC" (referring to litigation in federal district court in the District of Columbia). Mr. Hamilton asked several follow-up questions about DHS's protocols and operational issues relating to CBP's handling of noncitizens under Title 42 procedures. As a result of these questions, a CBP official sent Mr. Hamilton a two-page Word document marked "attorney-client privileged" providing CBP's responses

---

[2] The information that follows is based on emails and other similar documents in the government's possession. The government is not filing these documents with this motion because they include privileged communications and work product, but should the Court desire to review these documents, the government will submit them *in camera*.

[3] This order was issued on March 20, 2020 and took effect on that date, and then was published in the Federal Register on March 26, 2020. *See* 85 Fed. Reg. 17,060.

to Mr. Hamilton's inquiry, including information about procedures followed by CBP in connection with its Title 42 activities and operational impacts.

- On July 1, 2020, in connection with the *J.B.B.C.* lawsuit in the District of Columbia, Mr. Hamilton was forwarded an email chain in which other DOJ and HHS attorneys were discussing legal and operational issues relating to the custody of an unaccompanied child who was challenging the use of Title 42 procedures as to him/her.  Mr. Hamilton was asked to weigh in on a strategic question concerning the child's custody status and its possible effect on the lawsuit.

- On September 23, 2020, Mr. Hamilton emailed several attorneys at HHS to discuss the possible strategic benefits of a proposed course of action in the government's appeal of an order that had been issued in the *Flores* litigation relating to the government's custody of unaccompanied children.  An HHS attorney informed Mr. Hamilton that he would be contacted by two identified attorneys within HHS's Office of General Counsel (presumably by phone).

- On September 30, 2020, Mr. Hamilton reviewed and edited a draft objection to a magistrate judge's report and recommendation that the government was planning to file (and ultimately did file) in the *P.J.E.S.* litigation.

- On October 20, 2020, Mr. Hamilton was among a group of government officials invited to participate in a conference call to discuss various legal and operational issues surrounding how unaccompanied children would be held in custody pending possible expulsion from the country pursuant to Title 42 authority.

- On December 16, 2020, Mr. Hamilton was among a group of government officials provided with the draft version of a reply brief the government was planning to file (and ultimately did file) in the *P.J.E.S.* litigation in the D.C. Circuit, and was on the email chain when DHS submitted its comments on the brief.

- On December 29, 2020, Mr. Hamilton was among a group of government officials provided with a draft Fed. R. App. P. 28(j) letter that the government was planning to file (and ultimately did file) in the *P.J.E.S.* litigation in the D.C. Circuit, and was on the email chain when DHS submitted its comments on the letter.

- On January 5, 2021, Mr. Hamilton was in contact with DHS by email seeking information about DHS's "encounters with [unaccompanied children] at the border" for possible use in the *P.J.E.S.* litigation in the D.C. Circuit.

- Also on January 5, 2021, Mr. Hamilton and DHS officials were contacted by email by a White House policy advisor to schedule a conference call to discuss "Title 42 Litigation."

C.     **Mr. Hamilton's involvement in the current lawsuit.**

The present lawsuit was filed by the State of Texas on April 22, 2021.  (Doc. 1.)  Mr.

Hamilton is one of six attorneys who have appeared in the case for Texas, and his electronic

signature appeared on the original complaint.  (Doc. 1 at 34.)  In that complaint, Texas primarily

challenged a February 2021 notice issued by CDC in which CDC stated that it was temporarily

excepting unaccompanied children encountered in the United States from expulsion under its

October 2020 Title 42 order pending CDC's reassessment of the Title 42 order in light of the

latest public health conditions.  (Doc. 1, ¶¶ 84–116.)  Texas alleged that this action was unlawful

and that the government should instead have followed CDC's October 2020 order with respect to

unaccompanied children, and also contended that the government has "departed from [its] own

rules pertaining to its processing of family units encountered along the southwest border"

without formally changing its announced policy.  (*See, e.g.*, Doc. 1, ¶¶ 53, 83.)  Texas contended

that the government defendants "are not acting in accordance with their own rules, which require

DHS to consult with CDC 'concerning how [any] types of *case-by-case, individualized*

*exceptions shall be made to help ensure consistency with current CDC guidance and public*

*health assessments*.'"  (Doc. 1, ¶ 120 (quoting 85 Fed. Reg. at 65,807–08) (emphasis added by

Texas).)  Texas also challenged DHS's detention practices with respect to noncitizens during the

COVID-19 pandemic, claiming that DHS is not complying with detention requirements allegedly

imposed by 8 U.S.C. § 1222(a) for noncitizens who potentially could have COVID-19.  (*See*

Doc. 1, ¶¶ 124–32.)

Texas has filed a first amended complaint on August 23, 2021.  (Doc. 62.)  Echoing the

original complaint's challenge to CDC's February 2021 notice excepting unaccompanied

children encountered in the United States from Title 42 expulsions, Texas now challenges CDC's

**Defendants' Motion to Disqualify – Page 7**

more recent Title 42 orders that have the same effect.  (*See* Doc. 62.)  According to Texas, CDC

was required to use notice-and-comment procedures for issuing its Title 42 orders, and has

otherwise acted in an arbitrary, capricious, or otherwise unlawful fashion.  (*See* Doc. 62, ¶¶ 75–

85.)  Texas also continues to challenge alleged deficiencies in DHS's detention practices,

including with respect to the detention of arriving noncitizens who may have COVID-19 (under

8 U.S.C. § 1222(a)) as well as under general provisions of the Immigration and Nationality Act

authorizing the detention of noncitizens pending removal proceedings.  (*See* Doc. 62, ¶¶ 86–98.)

The undersigned has conferred with Texas and Mr. Hamilton on a number of occasions in

an attempt to resolve the issues identified in this motion to disqualify, including over the course

of several phone calls, during the parties' in-person scheduling conference, and through email.

Because the parties have not been able to reach any agreement for the withdrawal of Mr.

Hamilton and his firm, this motion is being filed.

### III.    Argument and Authorities

As explained below, the Court should disqualify Mr. Hamilton from representing Texas

in this action because Mr. Hamilton's prior work related to the government's exercise of Title 42

authority as a DOJ attorney creates a conflict of interest.  In addition, because Mr. Hamilton has

a conflict and was not screened from the case, the conflict is imputed to his firm (the America

First Legal Foundation), and thus Mr. Hamilton's partners/associates at that firm—including

Matthew G. Whitaker, who has appeared in this case—should also be disqualified.

### A.    Relevant legal standards

"Motions to disqualify are substantive in nature and are decided under federal law."

*Azad v. Nationwide Prop. & Cas. Ins. Co.*, No. 3:19-CV-312-E-BH, 2019 WL 10888765, at *2

(N.D. Tex. Nov. 12, 2019) (citing *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir.

1995); *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992)).  "Consideration of a motion

to disqualify is 'governed by the ethical rules announced by the national profession in light of the

public interest and the litigants' rights.'"  *Id.* (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610

(5th Cir. 1992) (quoting *In re Dresser Indus., Inc.*, 972 F.2d at 543)).  "The Fifth Circuit Court of

Appeals has recognized the Model Rules of Professional Conduct (Model Rules) adopted by the

American Bar Association (ABA) as the national standard for considering motions to

disqualify."  *Id.* (citing *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009)).

Additionally, "[a]ttorneys practicing in the Northern District of Texas are subject to the Texas

Disciplinary Rules of Professional Conduct."  *Id.* (citing N.D. Tex. Local Civ. R. 83.8(e)); *see*

*also John Crane Prod. Sols., Inc. v. R2R & D, LLC*, No. 3:11-CV-3237-D, 2012 WL 3453696, at

*2 (N.D. Tex. Aug. 14, 2012).  "The Model Rules, 'the local rules adopted by the district court,

and the ethics rules of the state are all relevant to a motion to disqualify, but none is

dispositive.'"  *Id.* (quoting *John Crane Prod. Sols., Inc.*, 2012 WL 3453696, at *2).

 Here, the primary relevant rules are ABA Model Rules 1.9 and 1.11 and Texas

Disciplinary Rule 1.10, each of which governs conflicts of interest for former government

employees.  In pertinent part, ABA Model Rule 1.11 provides as follows:

> (a) Except as law may otherwise expressly permit, a lawyer who
> has formerly served as a public officer or employee of the
> government:
>
> (1) is subject to Rule 1.9(c); and
>
> (2) shall not otherwise represent a client in connection with a
> matter in which the lawyer participated personally and
> substantially as a public officer or employee, unless the
> appropriate government agency gives its informed consent,
> confirmed in writing, to the representation.

Model Rules of Prof'l Conduct R. 1.11(a).  ABA Model Rule 1.9(c) relates to a lawyer's

confidentiality obligations and provides:

**Defendants' Motion to Disqualify – Page 9**

> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

*Id.* R. 1.9(c).

Texas Disciplinary Rule of Professional Conduct 1.10 provides as follows, in pertinent part:

> (a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation.
>
> * * *
>
> (c) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows or should know is confidential government information about a person or other legal entity acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person or legal entity.

Tex. Discpl. Rules of Prof'l Conduct R. 1.10(a), (c).

At their core, rules like ABA Model Rules 1.11 and 1.9(c) and Texas Disciplinary Rule of Professional Conduct 1.10 are designed to prevent "side switching" when a government attorney goes into private practice. As one federal court has explained, courts "must be especially careful" when a government attorney has switched sides because "government attorneys may have had access to more kinds of information in connection with the prior representations than private attorneys typically do, [such that] there is a greater potential for misuse of information."

*United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 38 (D.D.C. 2004) (internal quotation marks and citation omitted).  The commentary to the Texas rule echoes this point, explaining that "[w]here a public agency and a private client are represented in succession by a lawyer, the risk exists that power or discretion vested in public authority might be used for the special benefit of the private client," and a "lawyer should not be in a position where benefit to a private client might affect performance of the lawyer's professional function on behalf of public authority." Tex. Discpl. Rules of Prof'l Conduct R. 1.10 cmt. 3.  Additionally, "unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service."  *Id.*; *see also* ABA Formal Ethics Op. 97-409 (1997) ("Rule 1.11 is thus concerned . . . to ensure against the possibility that substantial unfair advantage could accrue to the private client by reason of access to information about the client's adversary obtainable only through the use of public resources available during the lawyer's government service." (cleaned up)).

**B.**     **Mr. Hamilton should be disqualified because he obtained confidential government information relevant to this case and worked on the same "matter" while serving as an attorney at DOJ.**

As discussed below, Mr. Hamilton should be disqualified for either of two independent reasons:  (1) as a DOJ attorney he obtained confidential government information about the government's Title 42-public-health-related and immigration-related activities that is relevant to the present case and could be used to the government's disadvantage and (2) as a DOJ attorney he participated personally and substantially in Title 42 legal matters and his representation of Texas in this lawsuit is in connection with those matters.

1.  <u>Confidential information</u>.  Texas Disciplinary Rule 1.10 requires Mr. Hamilton's disqualification in this case because of his receipt of relevant confidential information while a

government attorney.  Under the Texas rule, the term "confidential government information"

means information which has been obtained under governmental authority and which, at the time

this rule is applied, the government is prohibited by law from disclosing to the public or has a

legal privilege not to disclose, and which is not otherwise available to the public.  Tex. Discpl.

Rules of Prof'l Conduct R. 1.10(g).  The Texas rule specifies that a lawyer "having information

that the lawyer knows or should know is confidential government information about a person or

other legal entity acquired when the lawyer was a public officer or employee may not represent a

private client whose interests are adverse to that person or legal entity."  *Id.* R. 1.10(c); *see also*

Tex. Discpl. Rules of Prof'l Conduct R. 1.05(b)(3) ("[A] lawyer shall not knowingly . . .  [u]se

confidential information of a former client to the disadvantage of the former client after the

representation is concluded unless the former client consents after consultation or the

confidential information has become generally known.").  Texas Disciplinary Rule 1.05(a)

defines "[c]onfidential information" to "include[] both privileged information and unprivileged

client information" (internal quotation marks omitted).  "Privileged information" refers to "the

information of a client protected by the lawyer-client privilege of Rule 5.03 of the Texas Rules

of Evidence or of Rule 5.03 of the Texas Rules of Criminal Evidence or by the principles of

attorney-client privilege governed by Rule 501 of the Federal Rules of Evidence for United

States Courts and Magistrates."  Tex. Discpl. Rules of Prof'l Conduct R. 1.05(a).  "Unprivileged

client information" means "all information relating to a client or furnished by the client, other

than privileged information, acquired by the lawyer during the course of or by reason of the

representation of the client."  *Id.*

Model Rule 1.9(c) also prohibits Mr. Hamilton's use and disclosure of confidential

information he learned while a DOJ attorney.  An ABA Opinion makes clear that a government

lawyer remains subject to the same kind of confidentiality obligations that apply to a lawyer in private practice.  *See* ABA Formal Ethics Op. 97-409 ("Where a former government lawyer wishes to represent private clients against her old agency in connection with the same kind of cases she handled while in government service, Rule 1.9(c) may pose an additional obstacle to her doing so."); Model Rules of Prof'l Conduct R. 1.9(c) ("A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:  (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client."). The ABA has recognized that it is unlikely a government lawyer could continue representation of a new client where the lawyer obtained confidential information from a former government client that is relevant to the new litigation.[4]

As discussed above, in his role as a DOJ attorney, Mr. Hamilton was provided with, or otherwise obtained, confidential information detailing DHS's operational policies and practices in connection with its Title 42 activities, as well as confidential information from CDC relevant

---

[4] *See* ABA Formal Ethics Op. 97-409 ("Although Rule 1.9(c) does not provide for automatic disqualification by virtue of a lawyer's prior representational activities, its restrictions on the use or disclosure of a former client's confidences may effectively disable a lawyer from undertaking a new representation under certain circumstances.  If a lawyer has information relating to the prior representation of her government client that would necessarily be used or revealed in a new client's cause, but which her former client will not allow her to use or reveal, her obligations to her former client under Rule 1.9(c) would almost certainly be deemed to 'materially limit' her representation of the new client under Rule 1.7(b). . . . Where the Rule 1.7(b) conflict arises from the lawyer's duty of confidentiality to a former client under Rule 1.9(c), the Committee believes it unlikely that the lawyer could form the 'reasonable belief' of no adverse affect since, in addition to the constraints on zealous representation implied by her obligation to keep her former government client's confidences, she would also be vulnerable to a disqualification motion by the government. . . . Accordingly, the lawyer could not undertake the new representation unless the former government client consented to waive the confidentiality barrier posed by Rule 1.9(c).").

to that agency's Title 42 orders and decision-making process.  For example, Mr. Hamilton was

on more than one occasion provided with information marked "law enforcement sensitive"

detailing DHS's operational plans and procedures for carrying out CDC's Title 42 orders (which

is directly relevant to Texas's allegations in this lawsuit that DHS is not properly detaining or

otherwise dealing with cover noncitizens arriving in the United States).  Mr. Hamilton also was

provided with an internal CDC assessment of the "pros" and "cons" of leaving CDC's March

2020 Title 42 order in place.  These documents also were marked "privileged."

More fundamentally, through his extensive contact and communication with DHS, HHS,

DOJ attorneys and other officials in connection with anticipated and actual litigation over the

government's Title 42 activities, Mr. Hamilton necessarily gained an insider's knowledge of

these government actors' mental impressions and candid evaluations of the strengths and

weaknesses of the government's legal positions in the Title 42 area, including with respect to

unaccompanied children.  Courts have found that a lawyer's mental impressions of this type

constitute "confidential government information."  *See United States v. Villaspring Health Care

Ctr., Inc.*, No. 3:11-43-DCR, 2011 WL 5330790, at *6 (E.D. Ky. Nov. 7, 2011) ("[Former

government attorney] has confidential government information in the form of strategic insights,

such as knowledge of the strengths and weaknesses of the evidence compiled against [the

defendant company]. . . .  He may not now use that information to benefit his client . . . to the

'material disadvantage' of the United States."); *Philip Morris*, 312 F. Supp. 2d at 43 (explaining

that a former government attorney's "insights into the strengths and weaknesses of the

Government's evidence regarding alleged tobacco fraud is exactly the kind of information

[received during the first representation] . . . that might be useful to the second

[representation]").

Importantly, Texas Disciplinary Rule 1.10(c) does not require that the attorney *actually use* the confidential government information when working for a later client adverse to the government in order to be disqualified. The Texas rule requires only that the lawyer "hav[e] information that the lawyer knows or should know is confidential government information" about an entity, in which event the former government lawyer "may not represent a private client whose interests are adverse to" that entity. Tex. Discpl. Rules of Prof'l Conduct R. 1.10(c).

In this case, it is clear that the confidential information Mr. Hamilton received from the government—such as internal government information concerning the strength and weaknesses of CDC's exercise of legal authority under Title 42 and about DHS's operational plans and practices in carrying out Title 42 activities—is highly relevant to and could be used to the disadvantage of the government in connection with Texas's allegations in this lawsuit that CDC did not follow correct administrative procedures in issuing one or more Title 42 orders and that DHS somehow is not properly expelling noncitizens pursuant to Title 42 orders or not complying with the immigration laws. Accordingly, under both the Texas Disciplinary Rule and ABA Model Rule, Mr. Hamilton should be disqualified.

2. <u>Side switching</u>. Both the Texas Disciplinary Rules and the ABA Model Rules generally prohibit an attorney from representing a private client[5] "in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee." Tex. Discpl. Rules of Prof'l Conduct R. 1.10(a); Model Rules of Prof'l Conduct R. 1.11(a). Thus, the first relevant question here is whether the present lawsuit and Mr. Hamilton's prior legal work on

---

[5] Although Texas is of course a state, for purposes of the conflict-of-interest analysis it is considered to be Mr. Hamilton's private client. *See, e.g.*, Tex. Discpl. Rules of Prof'l Conduct R. 1.10(h) (explaining that a "private client" "includes not only a private client but also a governmental agency if the lawyer is not a public officer or employee of the agency").

Title 42 issues for the government constitute the same "matter."[6] The ABA Model Rule defines "matter" to include "any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest or other particular matter involving a specific party or parties." Model Rules of Prof'l Conduct R. 1.11(e). The commentary to ABA Model Rule 1.11 explains that "a 'matter' may continue in another form" and that "[i]n determining whether two particular matters are the same, the lawyer should consider the extent to which the matters involve the same basic facts, the same or related parties, and the time elapsed." Model Rules of Prof'l Conduct R. 1.11 cmt. 10. The Texas Disciplinary Rule defines "matter" to include "[a]ny adjudicatory proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge accusation, arrest or other similar, particular transaction involving a specific party or parties." Tex. Discpl. Rules of Prof'l Conduct R. 1.10(f). As explained by the D.C. Court of Appeals in applying D.C. Rule of Professional Conduct 1.11(a) (which is that jurisdiction's analog to ABA Model Rule 1.11(a) and Texas Disciplinary Rule 1.10(a)):

> Whether a second matter is the same or substantially related to an earlier matter is determined by "a practical inquiry asking whether the two matters substantially overlap." The "same matter" test involves examining "the extent to which the matters involve the same basic facts, related issues, the same or related parties, time elapsed, the same confidential information, and the continuing existence of an important government interest." Two representations involve the same matter if they relate to the same discrete, identifiable transactions or conduct involving a particular situation and specific parties. The lawyer may rebut this presumption only by showing that the two matters did not overlap.

---

[6] Model Rule 1.11(c) and Texas Rule 1.10(c) also require that former government lawyer's work constitute work on a "matter." That criteria is satisfied here because the matters Mr. Hamilton handled now and while at DOJ involved litigation with "a specific party or parties." Model Rules of Prof'l Conduct R. 1.11(e); Tex. Discpl. Rules of Prof'l Conduct R. 1.10(f).

*In re White*, 11 A.3d 1226, 1244 (D.C. 2011) (internal citations and brackets omitted).

Here, the cases in which Mr. Hamilton participated as a DOJ attorney and the instant case are the same "matter" within the meaning of the rules.  They share many of the same underlying facts, issues, parties and confidential information, and the time elapsed between Mr. Hamilton's work on behalf of DOJ and his participation in this lawsuit was only a few months.  The government agencies named in this action are common parties in all the cases, of course.  The basic facts are likewise the same or at the very least substantially connected, as they involve the government's exercise of authority under Section 265 of Title 42 of the U.S. Code, and enforcement of CDC's Title 42 orders, particularly with respect to unaccompanied children. Indeed, there is a direct link between the *P.J.E.S.* litigation and this case insofar as the *P.J.E.S.* district court effectively excepted unaccompanied children from expulsion from the United States pursuant to CDC's October 2020 order by an injunction issued in November 2020 that remained in place until late January 2021.  After that injunction was stayed by the D.C. Circuit, CDC decided to continue to except unaccompanied children encountered in the United Sates from expulsion pursuant to the October 2020 Title 42 order.  CDC then issued the February 2021 notice that Texas challenged in this litigation.  Although the February 2021 notice has been superseded by a July 2021 CDC Order upon CDC's reassessment of the public health implications of applying the Title 42 order to unaccompanied children, the July 2021 order adheres to the position initially adopted in the February notice, and is a continuation of the government's practices as to unaccompanied children under Title 42.

In sum, given the substantial overlap between the matters, Mr. Hamilton's representation of Texas in this lawsuit constitutes work on the same "matter" in which he participated as a government attorney.  *See* Model Rules of Prof'l Conduct R. 1.11(a); Tex. Discpl. Rules of

Prof'l Conduct R. 1.10(a); *see also Great Divide Wind Farm 2 LLC v. Aguilar*, 426 F. Supp. 3d

949, 974–75 (D.N.M. 2019) ("To underscore the focus on substance over form, the Court notes

that other federal courts have found that the scope of the attorney's work is more determinative

than the matters' facts and parties. . . . The Court adopts the same substantive test, weighing the

scope of the attorney's work in the first matter, the parties, the facts, and the time elapsed

between the first and second matter." (citations omitted)); *In re de Brittingham*, 319 S.W.3d 95,

99 (Tex. App.—San Antonio 2010, orig. proceeding) (concluding that "the term 'matter' in Rule

1.11(a) [interpreting the Texas analog for judges and others similarly situated] in the appellate

context includes a 'similar, particular transaction involving a specific party or parties,' and in

that particular case the 'matter' is the ancillary probate proceeding and not each discrete appeal

or original proceeding."); *Petition of Vt. Elec. Power Producers, Inc.*, 683 A.2d 716, 723 (Vt.

1996) ("Thus, while the word 'matter' may refer to the same litigation, disqualification may also

be proper where separate actions arise from the same situation and there is substantial overlap of

factual issues.").

Mr. Hamilton's work in the area of Title 42 as a government attorney also was personal

and substantial, as the rules contemplate.  *See* Model Rules of Prof'l Conduct R. 1.11(a); Tex.

Discpl. Rules of Prof'l Conduct R. 1.10(a).  Another federal court has explained that "personal"

and "substantial" means that the attorney is "personally involved to an important, material

degree, in the investigative or deliberative processes regarding the transactions or facts in

question." *Babineaux v. Foster*, No. 04-1679, 2005 WL 711604, at *6 (E.D. La. Mar. 21, 2005)

(citation omitted); *see also White*, 11 A.3d at 1245 ("A single act of approving or participating in

a critical step may be substantial if the act is of significance to the matter.").  Among other

things, Mr. Hamilton participated in phone calls and email correspondence discussing Title 42

matters, actively sought out information from DHS for possible use in Title 42 litigation, and was asked to weigh in when strategic considerations were being evaluated for decision. (*See* pp. 5–6, *supra*.) These kinds of activities represent substantial and personal involvement, such that disqualification is required. *See United States v. Smith*, 995 F.2d 662, 675–76 (7th Cir. 1993) (finding that an Assistant U.S. Attorney's involvement was "personal" and "substantial" under Illinois Rule of Professional Conduct 1.11(a) (similar to Model Rule 1.11 and Texas Rule 1.10) when he supervised another Assistant U.S. Attorney in charge of investigating a related case, attended high level meetings about the case, and signed an immunity agreement for one of the government's witnesses); *Sec. Investor Prot. Corp. v. Vigman*, 587 F. Supp. 1358, 1367 (C.D. Cal. 1984) (finding that, when an SEC regional administrator signed a complaint and trial brief, he assumed the "personal and substantial responsibility of ensuring that there existed good ground to support the SEC's case"); *White*, 11 A.3d at 1245–46 (finding that an attorney who reviewed and commented on a letter of determination regarding an age-discrimination complaint had participated personally and substantially even though the attorney did not draft the letter or directly supervise the staff member who did); *cf.* 18 U.S.C. § 207(*i*)(2) (provision within the Ethics in Government Act defining "participated" as "an action taken . . . through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or other such action").

* * * * *

To sum up, this Court should disqualify Mr. Hamilton because he obtained confidential government information that could be used to the government's disadvantage in this case and because he is currently working on the same matter in which he participated personally and substantially as a DOJ attorney.

**C.     Disqualification of Mr. Hamilton's firm is also required because the conflict is imputed.**

Finally, in addition to disqualifying Mr. Hamilton, his firm—the America First Legal Foundation—should also be disqualified.  Under both the ABA and Texas rules, Mr. Hamilton's conflict of interest is imputed to the firm unless Mr. Hamilton was timely screened from this lawsuit.  *See* Model Rule of Prof'l Conduct R. 1.11(b) ("When a lawyer is disqualified from representation under paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless: (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this rule."); Tex. Discpl. Rules of Prof'l Conduct R. 1.10(d) ("After learning that a lawyer in the firm is subject to paragraph (c) with respect to a particular matter, a firm may undertake or continue representation in that matter only if that disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom."); *id.* R. 1.10(b) ("No lawyer in a firm with which a lawyer subject to paragraph (a) is associated may knowingly undertake or continue representation in such a matter unless: (1) The lawyer subject to paragraph (a) is screened from any participation in the matter and is apportioned no part of the fee therefrom; and (2) written notice is given with reasonable promptness to the appropriate government agency.").

Here, Mr. Hamilton was not in any manner "screened" from America First Legal Foundation's representation of Texas in this case because Mr. Hamilton signed the case-initiating complaint and, indeed, was the only America First Legal Foundation attorney who had appeared in the case at that time—Mr. Whitaker only later entered an appearance as a second America First Legal Foundation attorney for Texas in the case.  Accordingly, all America First

Legal Foundation attorneys, including Mr. Whitaker, should be disqualified from representing Texas in this case.

## IV.     Conclusion

For all these reasons, the Court should disqualify Mr. Hamilton from representing Texas in this lawsuit and also disqualify all other attorneys within his same firm, the America First Legal Foundation, including Mr. Whitaker.

Respectfully submitted,

Chad E. Meacham
Acting United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:    214-659-8626
Facsimile:     214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

<u>Certificate of Conference</u>

This is to certify that I have conferred with Texas about this motion and that it is opposed.

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney

<u>Certificate of Service</u>

On October 6, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney