IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH R. BIDEN, JR. et al.,<br><br>    Defendants. | Civil Action No. 4:21-CV-579-P |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Chad E. Meacham
Acting United States Attorney

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:    214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

The government's motion to dismiss identified a number of independent reasons that Texas's claims are subject to dismissal. As discussed herein, Texas fails to rebut these arguments and has not shown that it is entitled to proceed in this suit on any claims. The Court should grant the government's motion and dismiss this case.

## I. Argument and Authorities

**A.   Texas's Title 42 claims (claims A and B) should be dismissed.**

The government previously argued that Texas's claims challenging CDC's Title 42 orders should be dismissed for multiple reasons, including for lack of standing, because the matters at issue are committed to agency discretion, the APA's zone-of-interests requirement is not satisfied, and Texas fails to state a claim. Texas fails to (and cannot) rebut these grounds for dismissal, and its Title 42 claims should be dismissed.

<u>Standing</u>.  As relevant to the issue of standing, it is important to note that Texas's amended complaint relies *only* on claimed pocketbook injuries attributable to an alleged increase in the number of "unlawful" noncitizens in the state. (Doc. 62, ¶¶ 5–16.) But exception from CDC's Title 42 orders does not confer any immigration status on anyone, and thus does not obligate Texas to provide benefits to anyone. This case is thus unlike the Fifth Circuit precedent that Texas has relied on in which that court found standing for Texas to challenge a new immigration program (DAPA) because it conferred "lawful presence" on 500,000 undocumented noncitizens in Texas, forcing the state to choose between spending millions of dollars to subsidize their driver's licenses or amending the state's statutes. *See Texas v. United States*, 809 F.3d 134, 148, 155–60 (5th Cir. 2015). No similar facts are shown here.

Texas's response attempts to bridge this gap by focusing on healthcare expenditures, with Texas now suggesting that it has standing based on the impact that "increased illegal

**Reply in Support of Defendants' Motion to Dismiss – Page 1**

immigration, particularly by illegal immigrants with COVID-19, has on the resources, healthcare, and public-health systems of" cities and states at or near the border. (*See* Doc. 89 at 6.) But as previously noted by the government (*see* Doc. 79 at 16), the Fifth Circuit has made clear that generalized complaints that "illegal immigration" may have some effect on a state's budget or resources are insufficient to establish standing. *See Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015). In addition to failing to show a cognizable injury in fact, Texas also fails to show causation. CDC's Title 42 orders are not immigration actions or policies. Instead, to the extent there are noncitizens who are not expelled under a Title 42 order, such persons remain subject to the entire body of pre-existing immigration laws. It is those laws—not anything in a Title 42 order or that CDC may do—that will determine if any specific noncitizen is admitted into the country, placed in removal proceedings, or eligible for any specific immigration benefit. And as the Supreme Court's recent decision in *California v. Texas* makes clear, the causal connection necessary to support standing is absent when "other provisions of [law], not the [challenged] provision, impose . . . other requirements" that affect the state's pocketbook. 141 S. Ct. 2104, 2119 (2021). Texas's only response is to say that "this case is not *California v. Texas*," (Doc. 89 at 8), but Texas provides no explanation for this assertion and, in fact, Texas's live complaint relies on the same kinds of "pocketbook" injuries that were the subject of the Supreme Court's ruling in *California v. Texas*. (*See* Doc. 62, ¶¶ 5–15.) It is telling that after mentioning *California v. Texas* in its brief, Texas immediately pivots to discussing alleged injuries attributable to an increased risk of COVID-19 spread, but those alleged injuries do not conform with the alleged injuries that Texas has actually pleaded. (*See* Doc. 62, ¶¶ 5–15.)

Texas's attempt to establish *parens patriae* standing based on alleged injuries to its residents (as opposed to itself) also fails. (*See* Doc. 89 at 7.) A state does not have standing as

*parens patriae* to bring an action against the federal government. *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982).

<u>Agency discretion</u>. As noted in the government's opening brief, neither the statute (42 U.S.C. § 265) nor the implementing regulation (42 C.F.R. § 71.40) establishes any meaningful standards by which a court can judge the exercise of the agency's decision to end a Title 42 order for a class of persons (e.g., unaccompanied children). To the contrary, the statute states only that CDC may leave a Title 42 order in place for such period of time that CDC "may deem necessary" to avert the danger of the introduction of a communicable disease, 42 U.S.C. § 265, which under Fifth Circuit precedent is discretion-conferring language, *see Texas v. U.S. Envtl. Prot. Agency*, 983 F.3d 826, 837 (5th Cir. 2020). Texas seems to concede that the statute provides no meaningful standards (*see* Doc. 89 at 9 ("the question is not over the statute")), but suggests that the Final Rule at 42 C.F.R. § 71.40 does so, (Doc. 89 at 9). However, Texas tellingly does not identify what those purported standards are. In fact, on the issue of CDC's authority to terminate a Title 42 order, the regulation simply mirrors the statutory "deems necessary" language. *See* 42 C.F.R. § 71.40(a). Again, then, CDC's discretion in terminating a Title 42 order (in whole or in part) is in no way constrained by the regulation, nor does the regulation provide any meaningful, substantive standards by which a court can judge CDC's decisions in this regard. No APA review is available.

<u>Zone of interests</u>. Texas offers no argument on the APA's zone-of-interests requirement. For the reasons previously given by the government, Texas's alleged immigration-related injuries associated with an increased number of noncitizens in the country do not fall within the zone of interests of the Title 42 public health statute. By not responding to this argument, Texas concedes that the zone-of-interests requirement bars its claims about CDC's Title 42 orders.

**Reply in Support of Defendants' Motion to Dismiss – Page 3**

<u>Notice and comment</u>.  Texas's arguments for its notice-and-comment claim also fail under Rule 12(b)(6).  Notice and comment was never used for any CDC order issued under 42 U.S.C. § 265.  Thus, even if such a requirement were assumed to apply, Texas cannot selectively use it to resurrect a prior Title 42 order (the October 2020 order) that it prefers, when that order also was not issued with notice and comment.[1]  *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1205 (D.C. Cir. 2020).

Regardless, notice-and-comment procedures were not required.  Texas theorizes that CDC's July and August 2021 orders were "legislative" because they purportedly "set forth the parameters that governed when particular persons would be placed into removal proceedings and what would happen once those proceedings had commenced."  (Doc. 89 at 10.)  But this is not correct.  CDC's Title 42 orders have never purported to govern or control what happens to persons who are not expelled under Title 42, including whether any person should be placed in removal proceedings or what happens if such proceedings are commenced.  Any decisions to commence removal proceedings with respect to any particular person, and the rules and requirements for what happens in such proceedings, are entirely separate matters governed by pre-existing immigration laws and regulations.  Such matters cannot serve to engraft a notice-and-comment requirement onto CDC's exercise of its public health authority under Title 42.

**B.    Res judicata bars Texas's detention/parole claims (claims C.1 and D).**

Texas argues that the MPP case did not involve the same "claim" (under the Fifth

---

[1] Texas briefly suggests that notice and comment could somehow have been required for CDC's Title 42 orders in July and August 2021 but not for the order issued in October 2020, due to the "stage in the pandemic" at that time.  (Doc. 89 at 10.)  But Texas provides no explanation or authority for this supposed distinction.  And given that the pandemic began in the United States in or around March 2020, under Texas's own theory there would have been plenty of time in advance of the October 2020 order to conduct a notice-and-comment rulemaking for that order, if that were required.

**Reply in Support of Defendants' Motion to Dismiss – Page 4**

Circuit's broad nucleus-of-operative-facts test) that is presented by Texas's detention/parole claims here. (*See* Doc. 89 at 11–12.) But the record of the MPP case, including Texas's operative complaint in that action, flatly refutes this argument. In the instant case, Texas is asserting that the government has violated 8 U.S.C. § 1225 by not detaining noncitizens in removal proceedings and instead paroling what the state views as too many such noncitizens. (Doc. 62, ¶¶ 30–31, 86–88, 92–93.) Texas brought a claim under *literally* the same statute in the MPP case—a claim for "Violation of Section 1225." (*See* Doc. 80 at App. 071.) The relevant "nucleus of operative facts" for that claim was Texas's view that the government is not detaining enough noncitizens as purportedly required by section 1225. Texas is making the same claim, about the same alleged injury, in this case. The grounds for res judicata could not be clearer. And of course, the fact that the MPP case *also* "involved suspension of the Migrant Protection Protocols" (Doc. 89 at 12)—i.e., a separate claim under the APA that termination of MPP was arbitrary and capricious—does not change this analysis.

At most, Texas's argument appears to be that Texas is advancing a slightly different *theory of causation* for the claimed section 1225 violation in this case, and therefore res judicata should not apply. In the MPP case, Texas's theory was principally that the claimed section 1225 violation was caused by the rescission of the MPP program. But a different theory of causation does not permit Texas to avoid the res judicata effect of the judgment in the MPP case. When the same nucleus of operative facts is present—which is true here because Texas has complained in both cases that not enough noncitizens are being detained, in alleged violation of section 1225—res judicata applies regardless of whether different "substantive theories [are] advanced." *Hous. Prof'l Towing Ass'n v. City of Hous.*, 812 F.3d 443, 447 (5th Cir. 2016).

Texas's discussion of the relief requested (and obtained) in the MPP case further

**Reply in Support of Defendants' Motion to Dismiss – Page 5**

highlights why its section-1225-related claims are barred by res judicata here. (*See* Doc. 89 at 12–13.) Texas brought and prevailed on a section 1225 claim in the MPP case. (*See* Doc. 80 at App. 118–20.) The relief it obtained was an injunction that requires the government to reimplement MPP, and this relief is specifically tied to the government's detention activities under section 1225—as Texas notes, the government is forbidden under the terms of Judge Kacsmaryk's injunction from discontinuing MPP until it has the capacity to "'detain all aliens subject to mandatory detention under Section [1225].'" (Doc. 89 at 12; *see also* Doc. 80 at App. 128.) This is further confirmation that a claimed section 1225 violation formed part of the "nucleus of operative facts" of the MPP case, and thus cannot be relitigated here. Indeed, after having expressly pleaded a claim for "Violation of Section 1225" in the MPP case *and* having obtained a ruling in its favor on that claim from Judge Kacsmaryk, Texas cannot now seek to obtain a second injunction from this Court merely by asking for different relief (i.e., relief different from what Judge Kacsmaryk ordered) when that relief is targeted at the same purported problem. Res judicata does not turn on the "type of relief requested." *Hous. Prof'l*, 812 F.3d at 447.

Finally, Texas suggests that the Court should stay rather than dismiss its claims. (Doc. 89 at 13.) But it cites no legal authority for that request, and abundant caselaw makes clear that when res judicata applies, the proper disposition is dismissal, not a stay.

C.  **No jurisdiction exists for Texas's claim under 8 U.S.C. § 1222 (claim C.2).**

<u>The section 1252(f)(1) bar.</u> Under 8 U.S.C. § 1252(f)(1), district courts do not have jurisdiction to enter injunctive relief "enjoin[ing] or restrain[ing] the operation" of various immigration provisions within Title 8, including 8 U.S.C. § 1222, except with respect to the application of such provisions "to an individual alien." Texas, however, is seeking an injunction

**Reply in Support of Defendants' Motion to Dismiss – Page 6**

that would dictate the terms of the government's operation of its detention authority under section 1222(a) with respect to all "aliens arriving on the southwest border." (Doc. 67-1.) Under the plain language of section 1252(f)(1), jurisdiction does not exist for such a claim. What Texas is asking for extends far beyond the case of any "individual alien" and thus is precisely the type of injunction forbidden by the statute.

Texas nonetheless argues that the section 1252(f)(1) bar should not apply because, in Texas's view, it merely seeks an injunction to have the government "comply" with what Texas believes section 1222(a) requires. (Doc. 89 at 13.) Texas argues that its position does not embody the "sophistry" that Justice Thomas criticized in *Nielsen v. Preap*, 139 S. Ct. 954, 975 (2019) (Thomas, J., concurring), because, according to Texas, Justice Thomas was merely concerned with claims that improperly sought to bypass section 1252(f)(1) to enjoin government actions that "exceeded" the relevant immigration statute, whereas Texas claims it wants the government to comply with section 1222. (Doc. 89 at 13.) But nothing in section 1252(f)(1) or Justice Thomas's *Preap* concurrence supports this hyper-limited reading of section 1252(f)(1) that would allow litigants to effectively obtain extra-statutory injunctions so long as they couch their requests in terms of "compliance" with the statute instead of a complaint that the statute was "exceeded." It would be a trivial exercise for any litigant to recharacterize its claim in this manner.

This attempted sleight of hand is highlighted by Texas's suggestion that, contrary to section 1222's plain language limiting the statute's reach to "aliens (including alien crewmen) arriving at ports of the United States," the statute should be understood as requiring the detention of certain noncitizens encountered outside Ports of Entry. (*See* Doc. 89 at 20.) Essentially, Texas urges that two "classes" of noncitizens exist under the statute, based on the statute's

**Reply in Support of Defendants' Motion to Dismiss – Page 7**

reference to: (1) those noncitizens "afflicted with" a subject disease and (2) those merely "coming from a country" where a subject disease is prevalent. *See* 8 U.S.C. § 1222(a). Texas theorizes that the latter "class" of noncitizens is subject to section 1222(a) detention at any time (not just at the Ports of Entry), while the former is not. But this strained reading of the statute makes no sense. First, it would mean that the government's authority to detain the other "class" of noncitizens, consisting of those who are *actually* "afflicted" with a subject disease but do not come from a country where such a disease is prevalent or epidemic, would be *more limited* than the government's detention authority when the person is merely coming from a place where disease is prevalent. Congress surely did not intend such an absurd result. Second, the statute makes clear that it applies, in its entirety, at the Ports of Entry, and does not purport to apply elsewhere. In addition to section 1222(a)'s opening clause (referring to "aliens (including alien crewman) arriving at ports of the United States"), section 1222(b) provides for the medical examinations of "[a]liens (including alien crewman) arriving at ports of the United States" and states that medical officers "shall be detailed for duty or employed at such ports of entry." Thus, the statute's only focus is the Ports of Entry.

In short, Texas is trying to use an injunction from this Court to impose Texas's (contested and highly questionable) reading of section 1222 on an entire class of noncitizens on an across-the-board basis. But by limiting the reach of injunctive relief in any given case to "the application of [the relevant immigration statutes] to an individual alien," section 1252(f)(1) guards against the Judicial Branch taking on precisely this type of wide-ranging, vaguely defined supervisory role over the nuts and bolts of immigration processing.

Standing. Standing is also an additional bar to Texas's section 1222(a) claim. Texas is not challenging any specific immigration policy change or program (like DACA or DAPA) that

**Reply in Support of Defendants' Motion to Dismiss – Page 8**

confers lawful presence on noncitizens in a manner that enables them to access state-provided benefits like driver's licenses. Instead, it is complaining of highly dispersed decisions made on an ongoing basis in individual noncitizens' cases when such persons present to border authorities. Texas identifies no legally cognizable injury arising from the effects of these decisions, either on an individual basis or in the aggregate. To the contrary, given the prosecutorial discretion the government exercises in determining whether and how to pursue grounds of inadmissibility for any given noncitizen it encounters, (*see* Doc. 79 at 46–47), it is clear that Texas has no redressable injury.

**D.      Texas does not provide any argument in support of its contract claim (claim E).**

The government moved to dismiss Texas's claim E, which is based on an alleged agreement between Texas and DHS. Texas has not responded with any argument on this claim and thus has abandoned it. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) ("When a plaintiff fails to defend a claim in response to a motion to dismiss . . . , the claim is deemed abandoned.").

**E.      Texas cannot proceed under the Take Care Clause (claim F).**

Texas asserts that two court decisions from the Ninth Circuit show that the Take Care Clause creates a justiciable cause of action. (Doc. 89 at 14.) But those decisions provide Texas no help. In *Las Americas Immigrant Advocacy Center v. Trump*, 475 F. Supp. 3d 1194 (D. Or. 2020), although the court declined to dismiss a Take Care Clause claim on a Rule 12(b)(6) motion, it more recently directed the parties to submit briefing on the question of "[w]hether the Take Care Clause provides a private cause of action which a plaintiff may bring against the President of the United States or his administration." *See* Docket Entry #122, *Las Americas Immigrant Advocacy Ctr. v. Trump*, No. 3:19-CV-2051 (D. Or. Aug. 11, 2021). Thus, that case

**Reply in Support of Defendants' Motion to Dismiss – Page 9**

sheds no light here.

The second case cited by Texas, *Center for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019), likewise does not support a Take Care Clause claim by Texas. In that case, the plaintiff was arguing that *Congress* had violated separation-of-powers principles by enacting a joint resolution that purportedly interfered with the Executive Branch's duty under the Take Care Clause. *See id.* at 561. Because the joint resolution was a duly enacted law, the court held that Congress did not, by passing this law, somehow prevent the President from exercising his constitutional duty to faithfully execute the laws as required by the Take Care Clause. *Id.* at 562. *Center for Biological Diversity* therefore is a separation-of-powers case and it says nothing about whether Texas has a cause of action under the Take Care Clause in the circumstances of this case.

This Court need not definitely resolve whether the Take Care Clause may, under some circumstances, support a cause of action. The government does not believe it does, but the point is largely academic here because, as noted previously by the government, any claim Texas is asserting under the Take Care Clause is duplicative of its other claims under the APA and immigration statutes. For the same reasons that those claims are subject to dismissal, so too should Texas's claim under the Take Care Clause be dismissed.

## II.  Conclusion

The Court should grant the government's motion to dismiss.

Respectfully submitted,

Chad E. Meacham
Acting United States Attorney

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214-659-8626
Facsimile:   214-659-8807
brian.stoltz@usdoj.gov

Attorneys for Defendants

Certificate of Service

On October 22, 2021, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Brian W. Stoltz
Brian W. Stoltz
Assistant United States Attorney