# United States District Court
## Northern District of Texas
## Fort Worth Division

STATE OF TEXAS,
    *Plaintiff,*

v.

JOSEPH R. BIDEN, JR., *et al.*;
    *Defendants.*

Case 4:21-cv-00579-P

### Brief in Opposition to Defendants' Motion to Disqualify

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700

*Counsel for the State of Texas*

AARON F. REITZ
*Lead Counsel*
Deputy Attorney General for Legal Strategy
Texas Bar No. 24105704
aaron.reitz@oag.texas.gov

LEIF A. OLSON
Special Counsel
Texas Bar No. 24032801
leif.olson@oag.texas.gov

MATTHEW G. WHITAKER
Admitted *pro hac vice*
America First Legal Foundation
300 Independence Avenue SE
Washington, D.C. 20003
(202) 964-3721
info@aflegal.org

# Contents

**Introduction** ........................................................................... 1

**Background** ........................................................................... 1

**Summary of Argument** ....................................................... 2

**Standard** ................................................................................ 3

**Argument** .............................................................................. 3

    A.    This Case Does Not Involve the Use of Confidential Government Information. .................................................. 3

        1.    The Governing Rules. ............................................... 3

        2.    There Is No Confidential Information at Issue in This Case. ............................................................... 5

    B.    This Case is Not the Same "Matter" for the Purposes of the Rules. ............................................................................ 8

        1.    The Governing Rules. ............................................... 8

        2.    This Case is Not the Same "Matter." ..................... 10

    C.    Even if a Conflict Existed, the Remedy Would Involve Screening Mr. Hamilton From Participation in the Case— Not Disqualification of Mr. Whitaker or America First Legal. ............................................................................... 11

**Conclusion** .......................................................................... 12

i

# Table of Authorities

**Cases**

*F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304 (5th Cir. 1995) .............................. 3

*Flores v. Barr*, No. CV-85-4544 (C.D. Cal.) ...................................................... 10

*G.Y.J.P v. Wolf*, 1:20-cv-01511 (D.D.C.) .......................................................... 10

*In re Drake*, 195 S.W.3d 232 (Tex. App. 2006) ................................................. 10

*In re ProEducation Int'l, Inc.*, 587 F.3d 296 (5th Cir. 2009) .............................. 3

*J.B.B.C. v. Wolf*, No. 20-CV-1509 (D.D.C.) ...................................................... 10

*P.J.E.S. v. Wolf*, No. 20-CV-2245 (D.D.C.) ....................................................... 10

*Smith v. Abbott*, 311 S.W.3d 62 (Tex. App. 2010) .............................................. 8

*Tex. Civil Rights Project v. Wolf*, 1:20-cv-02035 (D.D.C.) ................................ 10

*United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27 (D.D.C. 2004) .............. 6

*United States v. Villaspring Health Care Ctr., Inc.*, No. 3:11-43-DCR, 2011 WL 5330790 (E.D. Ky. 2011) .......................................................................... 6

**Statutes**

18 U.S.C. § 207(c) ................................................................................................ 2

42 U.S.C. § 265 ............................................................................................ 1, 5, 10

8 U.S.C. § 1222 ................................................................................................ 5, 10

**Other Authorities**

ABA Formal Ethics Op. 97-409 at n. 7 (1997) ........................................... 4, 7, 8, 9

**Rules**

Model R. of Prof'l Conduct 1.11 ................................................................... 4, 8, 9

Model R. of Prof'l Conduct 1.9(c) .................................................................................... 5

N.D. Tex. L.R. 836.8(e) .................................................................................................. 3

Tex. Disciplinary R. Prof'l Conduct 1.05(a) .................................................................. 4

Tex. Disciplinary R. Prof'l Conduct 1.05(b) .................................................................. 5

Tex. Disciplinary R. Prof'l Conduct 1.10(a) ............................................................... 4, 8

Tex. Disciplinary R. Prof'l Conduct 1.10(b) ................................................................ 12

Tex. Disciplinary R. Prof'l Conduct 1.10(c) ........................................................... 3, 4, 8

Tex. Disciplinary R. Prof'l Conduct 1.10(d) ................................................................ 12

Tex. Disciplinary R. Prof'l Conduct 1.10(f) ............................................................ 4, 9, 11

Tex. Disciplinary R. Prof'l Conduct 1.10(g) ................................................................ 4, 7

Tex. Disciplinary R. Prof'l Conduct 1.10(h) .................................................................. 4

Tex. Disciplinary R. Prof'l Conduct 1.10(i) ................................................................... 4

**Regulations**

42 C.F.R. § 71.40 ........................................................................................................... 1

5 C.F.R. § 2641.201 .......................................................................................... 9, 10, 11

5 C.F.R. § 2641.302 ....................................................................................................... 2

85 Fed. Reg. 65,806–12 (Oct. 13, 2020) ....................................................................... 1

86 Fed. Reg. 42,828 (Aug. 5, 2021) .............................................................................. 1

**Introduction**

The State of Texas chose America First Legal Foundation to represent it in a case challenging the federal government's failure to faithfully execute the law at the border in the middle of a pandemic. After six months of litigation and extensive motion practice, the Defendants now ask this Court to disqualify America First Legal and two of its lawyers, Gene Hamilton and Matt Whitaker, from that representation. There is no factual or legal foundation for doing so, which would substantially prejudice Texas. More, the Defendants' logic would also disqualify nearly all attorneys from working on subjects in which they used their expertise while in government service, including challenges to unlawful acts by their former government employers. That would be an absurd result, and the Court should deny the Motion.

**Background**

This case primarily involves a group of enactments collectively referred to as Title 42: a nearly century-old statutory authority, 42 U.S.C. § 265; a regulation promulgated to implement that authority, 42 C.F.R. § 71.40; and multiple orders issued by the Director of the Centers for Disease Control and Prevention under that authority, the latest in August 2021. 85 Fed. Reg. 65,806–12 (Oct. 13, 2020); 86 Fed. Reg. 42,828 (Aug. 5, 2021) ("replacing and superseding" the October 2020 order).

Among Texas's counsel in this case are Mr. Hamilton and Mr. Whitaker, both of whom served at the U.S. Department of Justice. Mr. Hamilton served as Counselor to the Attorney General and provided legal advice and counsel for general policymaking matters related to Title 42 during that time. Some of that work related to other particular cases involving the Title 42 regime. Mr. Whitaker served as Chief of Staff and Senior Counselor to the Attorney General and, later, as Acting Attorney General. His service ended before the regulation and orders at issue in this case were

issued. There is no dispute that Mr. Hamilton signed the initial complaint, see ECF No. 1, and that Mr. Whitaker has signed all subsequent documents for America First Legal.[1]

The Defendants now seek to disqualify Mr. Hamilton, Mr. Whitaker, and America First Legal from representing Texas in this case. They assert that "Mr. Hamilton's prior work related to the government's exercise of Title 42 authority as a DOJ attorney creates a conflict of interest;" that this disqualifies him from serving as Texas's counsel; and that, because he was not screened from participating in this case, this disqualification is imputed to all lawyers at America First Legal, including Mr. Whitaker. ECF No. 87 at 8.

## Summary of Argument

The Defendants' Motion does not justify the extreme remedy of denying Texas its counsel of choice. This case does not involve the inappropriate use of confidential information. This case is not the same as any "matter" in which Mr. Hamilton participated while serving in the Department of Justice—particularly as the definition of "matter" does not include regulation- or rule-making proceedings, which are at the center of this case. And even if there were a cognizable conflict, the appropriate remedy would be to screen Mr. Hamilton from America First Legal's representation. The Defendants' Motion should be denied.

---

[1] *See* 18 U.S.C. § 207(c) (restricting certain employees from making communications to or appearances before certain offices for one year after leaving service); 5 C.F.R. § 2641.302. Former employees may make communications to or appearances before certain offices within one Department, but the Department of Justice considers the restriction to come into effect when offices consult with other offices—such as when, for example, the Civil Division or a U.S. Attorney's Office consults with a leadership office in the case. So, once such consultations occur, under Department of Justice policies, the restriction applies to any future communications to or appearances before the offices in question. And under that approach, that restriction prohibits Mr. Hamilton from submitting this opposition.

### Standard

The Texas Disciplinary Rules of Professional Conduct primarily govern. *See* N.D. Tex. L.R. 836.8(e); *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009). Parties "cannot be deprived of the right to counsel of their choice on the basis of local rules alone;" among other things, the "local rules are not the 'sole' authority governing motions to disqualify counsel." *F.D.I.C. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). "In light of the public interest and the litigants' rights," the Court's decision is also "governed by the ethical rules announced by the national profession," such as the ABA Model Rules of Professional Conduct. *ProEducation*, 587 F.3d at 299-300 (cleaned up).

### Argument

**A. This Case Does Not Involve the Use of Confidential Government Information.**

The Defendants argue "Texas Disciplinary Rule 1.10 requires Mr. Hamilton's disqualification in this case because of his receipt of relevant confidential information while a government attorney." ECF No. 87 at 11-12. The Defendants are wrong. This case does not involve the use of confidential government information under Texas Rule 1.10, Texas Rule 1.05, or ABA Model Rule 1.9.

**1. The Governing Rules.**

A lawyer who has "confidential government information about a person or other legal entity acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person or legal entity." Tex. Disciplinary R. Prof'l Conduct 1.10(c). Information is "confidential government information" only if it satisfies a two-part test. First, it must have "been obtained under governmental authority[.]" *Id.* Second, the information must be something the government is "prohibited by law from disclosing to the public or has a legal privilege

3

not to disclose, and which is *not otherwise available to the public.*" *Id.* 1.10(g) (emphasis added).

The ABA held that Model Rule 1.11(b)—the predecessor to current Model Rule 1.11(c), which also serves as the corollary to Texas Rule 1.10(c)—"protects adverse third parties, but does not protect the government client itself against the use of 'confidential government information' against it by its former lawyers." ABA Formal Ethics Op. 97-409 at n. 7 (1997). This is so, because "the term 'person' in [the rule] does not include the former government client, but refers only to *third partie*s whom the government lawyer may *oppose* on behalf of a private party after leaving government service." *Id.* (emphasis added). As noted above, the Texas Rule contains the same prohibition, except it applies to "a person *or other legal entity*," Tex. Disciplinary R. Prof'l Conduct 1.10(c) (emphasis added), but does not describe a *government agency* as a "legal entity." *Cf.* Tex. Disciplinary R. Prof'l Conduct 1.10(a) (using the term "government agency); 1.10(f)(2) (describing the conflict-of-interest rules of "the appropriate government agency"); 1.10(h) (defining "Private Client" to include a "government agency").[2]

Texas Rule 1.05 prevents a lawyer from revealing or using "confidential information" to the disadvantage of a former client. That information can be either privileged or unprivileged. *Id.* 1.05(a). The information is "privileged" if it is "protected by the lawyer-client privilege of [Texas's rules of evidence] or by the principles of attorney-client privilege governed by Rule 501 of the Federal Rules of Evidence for United States Courts and Magistrates." *Id.* "Unprivileged client information" encompasses "all information relating to a client or furnished by the

---

[2] Texas Rule 1.10(i) states that "[a] lawyer who serves as a public officer or employee of one body politic after having served as a public officer of another body politic shall comply with paragraphs (a) and (c) as if the second body politic were a private client and with paragraph (e) as if the first body politic were a private client." That provision, however, does not change the fact that 1.10(c) refers to information about third parties. Nor does it matter in this case, as neither Mr. Hamilton nor Mr. Whitaker are a "public officer or employee" of the State of Texas.

client, other than privileged information, acquired by the lawyer during the course of or by reason of the representation of the client." *Id.* As with Rule 1.10, however, the prohibition ends once "the confidential *information has become generally known.*" *Id.* 1.05(b)(3) (emphasis added).

The ABA's Model Rule is similar. It bars "us[ing] information relating to the representation [of a former client] to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or *when the information has become generally known*…." Model R. of Prof'l Conduct 1.9(c) (emphasis added).

None of these rules prohibit using information "available to the public" or "generally known," as applicable. This makes sense. If the federal government willingly chooses to publish information on websites for the entire world to review, to make repeated public statements about that information, or to publish that information in the Federal Register, the information cannot be "confidential."

**2.  There Is No Confidential Information at Issue in This Case.**

Texas filed this case to hold the Defendants to their statutory and regulatory duties under Title 42 and 8 U.S.C. § 1222. ECF Nos. 1, 22, 46, 52, 62, 67, 89. None of the statutes, regulations, or orders at issue in this case are "confidential information." The data in Texas's filings in this case were from the Defendants' websites, public statements, the Federal Register, and media sources. See ECF No. 62, at ¶¶ 34–48, 54, 57, 59, 61, 64, 67, and 73. All of this information is "generally known" and "available to the public." Indeed, the Defendants published most of it themselves. As the information is not confidential, neither Texas's disciplinary rules nor the ABA's model rules prohibit America First Legal from using it as part of their representation in this case.

The Defendants nevertheless maintain that "Mr. Hamilton was provided with, or otherwise obtained, confidential information detailing DHS's operational policies and

5

practices in connection with its Title 42 activities, as well as confidential information from CDC relevant to that agency's Title 42 orders and decision-making process," thereby gaining "an insider's knowledge of [government officials'] mental impressions and candid evaluations of the strengths and weaknesses of the government's legal positions in the Title 42 area, including with respect to unaccompanied children." ECF No. 87 at 13-14. But this case is obviously distinguishable from those the government cites in support of its proposition.[3]

For example, this is not a case where a former government attorney learned about the "strengths and weaknesses" of an investigation into a private entity and then went to work for that private entity. *See United States v. Villaspring Health Care Ctr., Inc.*, No. 3:11-43-DCR, 2011 WL 5330790, at *6 (E.D. Ky. Nov. 7, 2011). Nor is it a case where a former government attorney obtained information about the strengths and weaknesses of the government's evidence regarding alleged tobacco fraud and then used it in a subsequent proceeding on behalf of a tobacco company. *See United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 39 (D.D.C. 2004).

Similarly, none of the discussion regarding Mr. Hamilton's potential participation in other cases is relevant to the information in this case. *See* ECF No. 87 at 4-5. Here, what is challenged is the federal government's failure to follow federal law, and the information to prove that failure is posted on the internet by the Defendants themselves; regularly updated by the Defendants themselves; and available for the entire world to see, courtesy of the Defendants themselves.

---

[3] It is very hard to reconcile the Defendants' argument to disqualify Mr. Hamilton with the Defendants' argument that the entire applicable legal regime has changed from the one in place when he was in public service. *See* ECF No. 79 at 9 ("In August 2021, CDC issued a new Title 42 order that superseded its prior October 2020 order . . . ."). If the CDC issued a new order in August 2021, and Mr. Hamilton was clearly not a Department of Justice employee at that time, what alleged confidential government information could he possibly have about the August order?

Moreover, after at least implicitly claiming that using *publicly available information* on the Defendants' websites and in the Federal Register constitutes the use of "confidential government information," and ignoring Texas Rule 1.10(g)'s textual, temporal limitation of "at the time [the] rule is applied," the Defendants boldly assert that:

> Importantly, Texas Disciplinary Rule 1.10(c) does not require that the attorney *actually use* the confidential government information when working for a later client adverse to the government in order to be disqualified. The Texas rule requires only that the lawyer "hav[e] information about an entity, in which event the former government lawyer "may not represent a private client whose interests are adverse to" that entity.

ECF No. 82 at 15 (emphasis in original). This rigid application was never intended by the rule and predictably leads to absurd results.

The fact that Mr. Hamilton might still possess confidential government information about other homeland security, national security, justice, or immigration matters has no relevance. Every attorney who works for a government agency obtains "confidential government information," *see* Tex. Disciplinary R. of Prof'l Conduct 1.10(g), during that employment. The Defendants essentially argue that every former government attorney is precluded from challenging unlawful government action—precluded forever, if any jot of what he learned during his employment remains unavailable to the public. That would be bad for the rule of law and bad for public policy, which is why it is not at all envisioned by the governing rules, which govern not the possession of confidential information but its *use* against a former client.[4]

---

[4] Indeed, contrary to the Defendants' bold assertion, the ABA noted in Formal Ethics Opinion 97-409 that "a former government lawyer will almost always have general knowledge of policies and practices of her former agency, gained through employment by or representation of that agency. Such general knowledge would ordinarily not be considered disqualifying under Rule 1.9(c)." ABA Formal Ethics Op. 97-409 at n. 17.

7

And the government's position is contradicted by the ABA's guidance. The confidential government information described in Texas Disciplinary Rule 1.10(c) does not include the government's own information. *See* ABA Formal Ethics Op. 97-409 at n. 7. *See also Smith v. Abbott*, 311 S.W.3d 62, 75-76 (Tex. App. 2010) (describing with approval the argument that "confidential government information" under Texas Rule 1.10(c) does not refer to the government's own information).

In sum, this case does not involve the use of "confidential government information." It challenges the Defendants' failure to follow the law, using facts, figures, and other information that the Defendants widely disseminate to the general public. The Texas Rule cited does not stand for disqualification here.

**B. This Case is Not the Same "Matter" for the Purposes of the Rules.**

The Defendants next argue that "the cases in which Mr. Hamilton participated as a DOJ attorney and the instant case are the same 'matter' within the meaning of the rules[,]" ECF No. 87 at 17, and therefore, prohibit Mr. Hamilton from representing the State of Texas in this case. Here, again, the Defendants are wrong. Mr. Hamilton has no conflict under Texas Rule 1.10(a) that would disqualify him from serving as counsel to the State of Texas.

**1. The Governing Rules.**

Under Texas Rule 1.10(a), "a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee…." *See also* Model R. Prof'l Conduct 1.11(a). A "matter," in turn, includes:

> (1) Any adjudicatory proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge accusation, arrest or other similar, particular transaction *involving a specific party or parties*; and (2) any other action or transaction covered by the conflict of interest rules of the appropriate government agency.

8

Tex. Disciplinary R. Prof'l Conduct 1.10(f) (emphasis added). Notably, it specifically does *not* include "*regulation-making or rule-making proceedings* or assignments[.]" *Id.* (emphasis added).

Therefore, as the ABA described Model Rule 1.11, which is similar to Texas Rule 1.10:

> A former government lawyer is . . . disqualified from representing private clients only where she "participated personally and substantially as a public officer or employee" in the same "particular matter" at issue in the subsequent representation; she is not forbidden from representing private parties in matters in which she did not so participate, or in matters that do not involve "discrete identifiable transactions or conduct involving a particular situation and specific parties[.]"

ABA Formal Ethics Op. 97-409 at 12.

Although not cited by the Defendants, federal regulations similarly prohibit a former government attorney from:

> [K]nowingly, with the intent to influence, mak[ing] any communication to or appearance before an employee of the United States on behalf of any other person in connection with a particular matter involving a specific party or parties, in which he participated personally and substantially as an employee, and in which the United States is a party or has a direct and substantial interest.

5 C.F.R. § 2641.201(a). In turn, the regulations explain that while "particular matter involving a specific party or parties" is described broadly in statute, "only those particular matters that involve a specific party or parties fall within the prohibition[.]" *Id.* at (h)(1). "Such a matter typically involves a specific proceeding affecting the legal rights of the parties or an isolatable transaction or related set of transactions *between identified parties*, such as a specific contract, grant, license, product approval application, enforcement action, administrative adjudication, or

9

court case." *Id.* (emphasis added). And the prohibition "applies only to communications or appearances in connection with the same particular matter involving specific parties in which the former employee participated as a Government employee." *Id.* at (h)(5).

Like the Texas Rules and the Model Rules, the federal regulations specifically exempt "matters of general applicability." Indeed, "[l]egislation or rulemaking of general applicability and the formulation of general policies, standards or objectives, or other matters of general applicability are not particular matters involving specific parties." *Id.* at (h)(2).

### 2. This Case is Not the Same "Matter."

None of the individual cases Mr. Hamilton previously advised on are the same "matter" for the purposes of Rule 1.10(f).

First, this is not one of the individual cases that arose during his time at the Department of Justice and cited by the Defendants. *See* ECF No. 87 at 3-4 (citing *J.B.B.C. v. Wolf*, No. 20-CV-1509 (D.D.C.); *P.J.E.S. v. Wolf*, No. 20-CV-2245 (D.D.C.); *Tex. Civil Rights Project v. Wolf*, 1:20-cv-02035 (D.D.C.); *G.Y.J.P v. Wolf*, 1:20-cv-01511 (D.D.C.); and *Flores v. Barr*, No. CV-85-4544 (C.D. Cal.)). Second, this is the first case in which a State has challenged the Defendants' compliance (or lack thereof) with their own laws and policies related to Title 42 or 8 U.S.C. § 1222. To the extent that the issues in this case overlap with those in the enumerated cases, it is not due to confidential information peculiar to each case; it is because they require applying and interpreting the same underlying legal authorities. The Defendants cite no authority for the proposition this is sufficient to disqualify—and the Texas authorities establish that it is not. *See In re Drake*, 195 S.W.3d 232, 236-237 (Tex. App. 2006, pet. denied) (interpreting parallel language in Rule 1.09).

Similarly, the Defendants did not attempt to justify their position based upon very similar federal regulations defining a "particular matter." *See generally* 5 C.F.R. § 2641.201. Nor could they: their own regulations do not define "particular matter" to encompass every single case involving the same generally applicable laws in perpetuity.

The Defendants' position is contrary to common sense. At bottom, that disputes concern the same underlying laws is not enough. That disputes involve the same government agency or agencies against different parties does not turn them into the same "matter." An attorney who formerly handled Clean Water Act issues for the Environmental Protection Agency is not generally barred from handling Clean Water Act issues for private clients. An attorney who handled voting-rights issues with DOJ's Civil Rights Division is not generally barred from handling voting-rights issues in private practice. And an attorney who advised on immigration lawsuits or the development of policies or regulations while at DOJ is not generally barred from challenging DHS's compliance with federal law.[5]

## C. Even if a Conflict Existed, the Remedy Would Involve Screening Mr. Hamilton From Participation in the Case—Not Disqualification of Mr. Whitaker or America First Legal.

The Defendants assert, without any supporting legal authority, that "[a]ll America First Legal Foundation attorneys, including Mr. Whitaker, should be disqualified from representing Texas in this case." ECF No. 87 at 20-21. Here, again, the Defendants are wrong.

There is no reason for Matt Whitaker or anyone else from America First Legal to be precluded from being on this case under the plain language of the applicable rules.

---

[5] This is particularly so when the applicable rules expressly foreclose their application to "*regulation-making or rule-making proceedings* or assignments[.]" *See* Tex. Disciplinary R. Prof'l Conduct 1.10(f) (emphasis added).

11

*See* Tex. Disciplinary R. of Prof'l Conduct 1.10(b) (stating, in the context involving prior work on the same matter, that lawyers from the same firm cannot "undertake or continue representation" unless the conflicted lawyer "is screened from any participation in the matter and is apportioned no part of the fee therefrom."); *id.* R. 1.10(d) (stating, in the context of a situation involving confidential government information, "a firm may undertake or continue representation in that matter only if that disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom."). As the rules indicate, even if Mr. Hamilton did have a conflict that would result in his disqualification from this case, the proper remedy would be for Mr. Hamilton to be screened from continued participation in the case under Texas Rules 1.10(b) or (d).

## Conclusion

For all of the reasons provided above, the Court should deny the Defendants' Motion.

Dated October 27, 2021.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

AARON F. REITZ
*Lead Counsel*
Deputy Attorney General for Legal Strategy
Texas Bar No. 24105704
aaron.reitz@oag.texas.gov

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700

LEIF A. OLSON
Special Counsel
Texas Bar No. 24032801
leif.olson@oag.texas.gov

*/s/* Matthew G. Whitaker
MATTHEW G. WHITAKER
Admitted *pro hac vice*
America First Legal Foundation
300 Independence Avenue SE

12

Washington, D.C. 20003
(202) 964-3721
info@aflegal.org

*Counsel for the State of Texas*